[No. 61377-0. En Banc. November 3, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. SOLOMON ESTES DEARBONE, *Petitioner*.

*Neil M. Fox, Jeffrey Ellis,* and *Brian Tsuchida* of *Seattle-King County Public Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Craig Peterson, Senior Prosecuting Attorney,* for respondent.

*James E. Lobsenz* on behalf of the American Civil Liberties Union, amicus curiae for petitioner.

Guy, J. — To request the death penalty, the State must file in the trial court notice of a special sentencing proceeding within 30 days of defendant's arraignment. The State also must serve a copy of this notice on defendant or defendant's counsel within the 30 days, unless the trial court finds *good cause* to extend or reopen the period for filing and service of the notice. RCW 10.95.040(2).

On the day notice was due in this case, a deputy prosecutor from King County notified defense counsel by voice mail, and later in person, of the State's intent to seek the death penalty. The deputy prosecutor did not serve a copy of the notice on defense counsel until after the time limit had expired. The trial court, on the State's motion, reopened the time period to allow the State to serve defense counsel. We hold good cause does not exist to reopen the period for service and reverse the trial court.

## BACKGROUND

On September 13, 1993, the Superior Court for King County arraigned Defendant Solomon Dearbone on two counts of aggravated first degree murder, one count of attempted first degree murder, and one count of fourth degree assault. Under RCW 10.95.040(2), the State had 30 days, or until October 13, 1993, to file notice of a special sentencing proceeding.

On October 4, 1993, the State requested that defense counsel submit any mitigating information which would contravene seeking the death penalty. Defense counsel told the deputy prosecutor that Defendant had fetal alcohol syndrome and probably suffered from organic brain damage. On October 8, 1993, defense counsel sent a mitigation package which, according to the deputy prosecutor, provided no evidence to support these claims.

On October 13, 1993, 30 days after arraignment, the parties agreed to extend the time for filing notice until the next

day and obtained a court order to that effect. On October 14, 1993, the parties sought and received a continuance of the filing date until November 12, 1993.

Negotiations over the production of additional mitigating evidence continued and, on November 10, 1993, defense counsel submitted a psychological report on Defendant. On November 11, 1993, defense counsel met with King County Prosecutor Norm Maleng to discuss whether the State would seek the death penalty. On the morning of November 12, 1993, Mr. Maleng determined to request the death penalty and signed the Notice of Special Sentencing Proceeding. The deputy prosecutor in charge of the case immediately filed the Notice with the superior court clerk at 8:36 a.m.

Earlier that morning, the deputy prosecutor left a voice mail message with defense counsel announcing the State's decision. On his way to file the Notice, the deputy prosecutor met defense counsel in the courthouse and told them the State would seek the death penalty against Dearbone. Although the deputy prosecutor had a signed copy of the Notice with him, he did not know he had to serve defense counsel under RCW 10.95.040(2) and failed to give them a copy of the Notice.

On November 15, 1993, defense counsel called the deputy prosecutor's office and requested a copy of the Notice. The deputy prosecutor sent a copy through interoffice mail, and it arrived at defense counsel's office on November 16, 1993. Defendant then moved to preclude the State from requesting the death penalty, arguing the time for service under RCW 10.95.040 had expired. On December 23, 1993, the day of the hearing on Defendant's motion, the deputy prosecutor personally served a copy of the Notice on defense counsel. The State also moved, under RCW 10.95.040(2), to reopen the time for serving the Notice.

At the December 23, 1993, hearing, the trial court found good cause to reopen the period for service and granted the State's motion, permitting the State to seek the death penalty. Dearbone filed a motion for discretionary review of

the trial court's ruling in the Court of Appeals, which certified the motion to this court.

## ISSUES

Dearbone's case presents the following issue: does good cause exist to reopen the period for serving the Notice? We conclude good cause requires proof of an external impediment to compliance and, absent this showing, substantial compliance with the terms of RCW 10.95.040 is insufficient.

## ANALYSIS

When the State intends to seek the death penalty, it must file written notice of its intent.

> If a person is charged with aggravated first degree murder as defined by RCW 10.95.020, the prosecuting attorney shall file written notice of a special sentencing proceeding to determine whether or not the death penalty should be imposed . . ..

RCW 10.95.040(1). The prosecuting attorney also must serve the written notice on defendant or defendant's attorney within 30 days of arraignment.

> The notice of special sentencing proceeding shall be filed and served on the defendant or the defendant's attorney within thirty days after the defendant's arraignment upon the charge of aggravated first degree murder *unless the court, for good cause shown, extends or reopens the period for filing and service of the notice* . . . .

(Italics ours.) RCW 10.95.040(2). This case tests the meaning of the exception to the 30-day rule, italicized above.

The consequence of failing to serve notice is clear: "If a notice of special sentencing proceeding is not filed and served as provided in this section, the prosecuting attorney may not request the death penalty." RCW 10.95.040(3). Two observations are important here. First, a specific statute in chapter 10.95, not a rule of criminal procedure, requires the prosecuting attorney to serve notice. Given the unique qualities of the death penalty, the Legislature has tailored pretrial procedures to govern the use of a special sentencing proceeding. Second, filing and service of notice is mandatory — no notice, no death penalty.

The trial court found good cause to reopen the period for service on three grounds: (1) the deputy prosecutor's efforts to accommodate the defense were a partial cause of the failure to serve, (2) Defendant had actual notice of the State's intent, and (3) Defendant suffered no prejudice as a result of the delay.

As a preliminary matter, the parties dispute whether this court should review the trial court's findings de novo or for an abuse of discretion. Dearbone contends that because the trial court made its decision on documentary evidence in the record rather than on personal observations of a witness, the appropriate standard of review is de novo. In addition, Dearbone claims the definition of good cause is a legal issue, and the finding of good cause is a mixed issue of law and fact.

The State argues good cause is a matter within the discretion of the trial court and, therefore, the appropriate standard of review is for an abuse of discretion.

■ This court will review de novo the trial court's finding of good cause under RCW 10.95.040. We analyze the trial court's ruling in two parts. First, we construe the definition of good cause as it appears in RCW 10.95.040. Because this is a legal question, we review the trial court's ruling on the issue de novo. *State v. McCormack*, 117 Wn.2d 141, 143, 812 P.2d 483 (1991) (de novo review for issues involving questions of law), *cert. denied*, 112 S. Ct. 1215 (1992).

Second, we determine whether the unique factual circumstances of this case constitute good cause as it is used in the statute. The Legislature's adoption of special pretrial procedures for seeking the death penalty implies that a finding of good cause is not a matter left solely to the trial court's discretion. Because the determination of good cause under RCW 10.95.040 is a mixed question of fact and law, centered on the meaning of the legal standard of good cause, we review the trial court's ruling on the issue de novo. *United States v. Spillone*, 879 F.2d 514, 520 (9th Cir. 1989) (trial court's ruling on mixed questions reviewable de novo), *cert. denied*, 498 U.S. 878 (1990); *State v. Cauthron*, 120 Wn.2d 879, 887, 846 P.2d 502 (1993) (mixed question of law and

fact under *Frye* test reviewed de novo); *State v. Tatum*, 74 Wn. App. 81, 86, 871 P.2d 1123 (1994) ("[w]hen the trial court bases an otherwise discretionary decision solely on application of a court rule or statute to particular facts, the issue is one of law, which is reviewed de novo").

■ ■ Reviewing the trial court's ruling de novo, we conclude the trial court erred by finding good cause in this case. First, good cause requires a reason *external* to the prosecutor for his failure to serve notice. Without this external reason, Defendant's actual notice of the State's intent and the corresponding lack of prejudice to Defendant's case is irrelevant. Second, substantial compliance with RCW 10.95.040 is insufficient proof of good cause.

Although we have upheld the procedures created in RCW 10.95 from general attacks, we have yet to define "good cause" as it appears in RCW 10.95.040. *See State v. Benn*, 120 Wn.2d 631, 845 P.2d 289, *cert. denied*, 114 S. Ct. 382 (1993). Amicus notes that some 339 statutes as well as numerous court rules use the term. In opinions which have construed three of these provisions, RCW 10.73.140 (personal restraint petitions), CrR 3.3 (speedy trial), and RCW 71.05.240 (involuntary commitment), courts have given definitions of good cause which we find compelling.

First, for habeas corpus and personal restraint petitions, a party must show an external cause for a procedural default. The United States Supreme Court recently defined good cause in the context of federal habeas corpus petitions. In *Coleman v. Thompson*, 501 U.S. 722, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991), the Supreme Court addressed defendant Coleman's claim that his attorney's failure to file a timely appeal was sufficient cause to overturn a state court order dismissing his petition. The Court disagreed and offered a definition of "cause" which is directly relevant here.

"[C]ause" under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."

*Coleman*, at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986)). An attorney's inadvertence alone is not good cause.

This court reached the same result in *In re Holmes*, 121 Wn.2d 327, 849 P.2d 1221 (1993). Under RCW 10.73.140, the Legislature has precluded review of a second personal restraint petition unless the petitioner "shows good cause why the petitioner did not raise the new grounds in the previous petition". In *Holmes*, the court rejected petitioner's assertion that he belatedly discovered relevant case law.

> [P]etitioner claims that the issues raised are newly discovered, through reading old and new cases. This . . . is not a "good cause" showing. It would essentially permit new issues to be routinely raised in subsequent personal restraint petitions by persons claiming not to have found relevant cases earlier . . ..

*Holmes*, 121 Wn.2d at 330. The petitioner's neglect in failing to read cases did not create the necessary good cause to allow a second petition. Ignorance of the rules is no excuse.

The State attempts to distinguish *Holmes* by arguing that the case involved a "specific-act" definition of good cause. According to the State, the definition of good cause differs when a court must excuse a party's failure to perform a specific act, for example, raising all appellate issues in a single personal restraint petition. Washington courts have never made this distinction. Whether a statute, on the one hand, requires a party to prove good cause for not completing a specific act or, on the other, requires a party to prove good cause for belatedly complying with the statute, the definition of good cause is identical. *Compare Holmes*, 121 Wn.2d at 330 (petitioner must show good cause why new grounds not raised in previous personal restraint petition) *with In re Kirby*, 65 Wn. App. 682, 866 n.2, 829 P.2d 1139 (1992) (hearing may be continued subject to petitioner's showing of good cause — no specific act required).

Second, the contrast between an external objective impediment and a self-created one appears also in cases construing the court's speedy trial rule, CrR 3.3. In *State v. Mack*, 89 Wn.2d 788, 576 P.2d 44 (1978), the court reviewed

whether good cause existed for Cowlitz County routinely to set jury trials beyond the 60-day limit in former JCrR 3.08. That rule permitted continuances beyond 60 days only "for good cause shown". *Mack*, 89 Wn.2d at 791.

The Superior Court claimed court congestion, cumbersome jury selection procedures, and the costliness of using judges pro tempore constituted good cause for not meeting the 60-day deadline. This court rejected these reasons, concluding "[s]elf-created hardship is not an excuse for violating mandatory rules." *Mack*, 89 Wn.2d at 794. Because the Superior Court had some control over court congestion and inefficient procedures, the court found no good cause for granting the continuances.

Third, the Court of Appeals in *In re Kirby, supra,* imported the good cause standard from criminal cases to decide whether a trial court had reason to continue a mental commitment hearing. The Court of Appeals ruled that forces beyond the court's and the State's control required a continuance in that case.

> Because the circumstances in this case indicate unavoidable and unusual delay attributable to the . . . particular cases before the court that day, rather than an institutionalized congestion of the system, the court did not abuse its discretion in granting a continuance for good cause . . ..

*In re Kirby*, 65 Wn. App. at 868-69. Good cause therefore required an unavoidable and unusual delay which was outside the State's control.

Turning to the facts of this case, the deputy prosecutor has conceded he was unfamiliar with the requirement of service in the statute. To diminish the importance of this concession, the State argues the deputy prosecutor's unfamiliarity was not the basis for the trial court's ruling. According to the State, the trial court premised its finding of good cause on defense counsel's actual notice of the State's intent to seek the death penalty.

The finding of an external impediment, however, *precedes* any discussion of actual notice or lack of prejudice. To show good cause, the State must first provide an external factor

for its default. Here, nothing prevented the deputy prosecutor from handing defense counsel a copy of the notice while they spoke in the courthouse on November 12, 1993. The State had ample opportunity to comply with the statute.

The State also contends that even though it did not follow the exact dictates of RCW 10.95.040, it substantially complied with the purpose and intent of the statute.[1] The Court of Appeals in *In re Santore*, 28 Wn. App. 319, 623 P.2d 702 (1981) defined substantial compliance as:

> actual compliance in respect to the substance essential to every reasonable objective of the statute. It means a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which the statute was adopted. What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case.

(Citations omitted.) *Santore*, 28 Wn. App. at 327. The State claims that proof of actual notice and the lack of prejudice are evidence of substantial compliance.

We decline to graft the doctrine of substantial compliance onto RCW 10.95.040. As we stated in *Seattle v. Public Empl. Relations Comm'n*, 116 Wn.2d 923, 809 P.2d 1377 (1991),

> It is impossible to substantially comply with a statutory time limit in the same way. It is either complied with or it is not. Service after the time limit cannot be considered to have been actual service within the time limit. We therefore hold that failure to comply with a statutorily set time limitation cannot be considered substantial compliance with that statute.

(Citations omitted.) 116 Wn.2d at 928-29. Substantial compliance is neither proof of good cause under RCW 10.95.040(2), nor is it an exception to the time limit established by the statute.

Because the prosecutor failed to prove an external impediment caused his procedural default, the trial court's rationale for finding good cause was untenable. The State's accommodation of the defense did not prevent the prosecutor from

---

[1]The State makes this claim as one argument for finding good cause. However, substantial compliance is a separate civil doctrine which excuses procedural defaults on technical grounds. *Seattle v. Public Empl. Relations Comm'n*, 116 Wn.2d 923, 928, 809 P.2d 1377 (1991) (actual compliance with substance of statutory requirement).

serving defense counsel on time. All negotiations ended the day before the deadline, and no evidence in the record suggests defense counsel induced the prosecutor not to serve the notice. The prosecutor's unfamiliarity with the requirements of the statute, not defense counsel's actions, caused the problem. We therefore reverse the orders of the trial court.

## CONCLUSION

We adopt a 2-step standard for proving good cause under RCW 10.95.040. First, the State must show an external impediment which prevented it from complying with the requirements of the statute. Second, the State must establish that the delay in filing or serving notice did not prejudice the preparation of defendant's case. Timely, actual notice of the State's intention to seek the death penalty, for example, may establish the lack of prejudice.

Because no external impediments existed in this case, we reverse the trial court's rulings on the State's and Defendant's motions. Under RCW 10.95.040(3), the State may not seek the death penalty against Defendant.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, JOHNSON, and MADSEN, JJ., concur.