[No. 63636-2. En Banc.]

Argued June 26, 1996.     Decided August 8, 1996.

THE STATE OF WASHINGTON, *Petitioner*, v. RICHARD
M. CLARK, *Respondent*.

TALMADGE, J. — After deciding to seek the death penalty for Richard M. Clark, the State did not serve the special notice on Clark or his counsel personally. Instead, relying on a long-standing agreement between the Snohomish County Prosecutor's Office and the Public Defender Office for daily pickup of papers, the State left the notice in a designated box, and a Public Defender staff person picked it up, stamped it "received," and delivered it to the defendant's attorney. Although the notice was filed and received by defense counsel within the statutory time period, the Snohomish County Superior Court found service was not timely under RCW 10.95.040 and barred the possibility of a death sentence in this case.

We hold the notice was timely filed and served for purposes of RCW 10.95.040(2) when it was served on the Public Defender Office in accordance with the requirements of CR 5. We reverse the order of the Snohomish County Superior Court and remand the case for further proceedings pursuant to RCW 10.95.

## ISSUE

Was the notice of special sentencing proceeding properly served under RCW 10.95.040?

## FACTS

Seven-year-old Roxanne Doll disappeared the night of March 31, 1995. Several days later, her body was found. Defendant Clark was a friend of Roxanne's family. Relying on physical evidence and information provided by his relatives, the police arrested Clark. On April 14, 1995, he was charged with first degree kidnapping, rape, and aggravated murder in connection with the crime.[1]

Clark was arraigned on April 17, 1995. Bill Jaquette, the director of the Snohomish County Public Defender Association, appeared on Clark's behalf. At Jaquette's request, the trial court extended the time for filing and service of the death penalty notice until 5:00 p.m. on September 22, 1995.

On September 19, 1995, a deputy prosecutor phoned Jaquette and advised him the death penalty notice would be filed. It is undisputed the notice was timely filed in the Snohomish County Superior Court on that date. That same day, pursuant to an agreement between the Public Defender Office and the Prosecutor's Office, the notice was left in the Public Defender Office box in the Prosecutor's Office with a cover memorandum. The death penalty notice and memorandum were picked up by a Public De-

---

[1]Clark moves pursuant to RAP 10.7 to strike the first three paragraphs of the State's brief because they consist of irrelevant and unsubstantiated allegations. The paragraphs describe Roxanne Doll's disappearance, the crime, and the information allegedly linking Clark to the crime. We deny the motion because the material contained in the State's brief is not improper; it is relevant to the background of the case and is based on the information filed by the State that is part of the record. We are aware the State's assertions are just allegations at this point because trial has not yet occurred.

fender Office staff person and carried to that office where they were stamped "Received Sep 20 1995 Sno. Co. Public Defender." It is not disputed the notice was received by counsel for Clark within the statutory period.

The trial court described the arrangement between the offices as follows:

## VIII.

The offices of the prosecuting attorney and the public defender have an agreement for transferring correspondence and other papers. Twice each day a non-attorney staff person of the public defender's office delivers its correspondence and other papers for the prosecuting attorney to the prosecutor's office and retrieves the correspondence and other papers from the prosecuting attorney for the public defender from a box within the prosecutor's office.

## IX.

When a public defender document is to be filed, the public defender [clerk leaves a stamped copy at] the prosecutor's office, files the original with the [court] clerk and, and returns the other stamped copy to the public defender's office.

## X.

Copies of ordinary documents filed by the prosecuting attorney are left in the box in the prosecutor's office along with other correspondence and papers. Public defender procedures call for its staff person to pick up all such papers, bring them back to the public defender's office, stamp them "Received," and distribute them as appropriate. For papers directed to a particular attorney, the papers are placed in the box for that attorney. There are no provisions for returning copies of papers . . . marked "Received." However, for some papers . . . the deputy prosecuting attorney requires . . . a receipt verification.

Clerk's Papers at 24-26.

The Public Defender staff picked up and dropped off papers at the Prosecutor's office, as part of the courthouse

run, each day at 9:00 a.m. and 3:00 p.m. The staff were known to the Prosecutor's office. The box for Public Defender papers was clearly designated, and located in an area of the Prosecutor's office not open to the public. The two offices had relied on this system for service of all motions and exchange of all correspondence for many years with no reported problems. One Public Defender staff person noted: "it's so routine." *Id.* at 118. Clark admitted the system was used for motions, correspondence, and all other papers served on Public Defender attorneys, except informations or summonses. The two offices never adopted a special protocol for service of papers in cases involving the death penalty.

The State sought personally to serve the notice on Jaquette on September 29, 1995. Clark thereafter moved to strike the notice. The trial court concluded the notice was not timely served under the statute because personal service was necessary, and struck the notice, directing the case to "proceed without the possibility of the death penalty." Clerk's Papers at 30. We granted the State's motion for discretionary review. RAP 2.3(b); RAP 4.2(a).

## ANALYSIS

RCW 10.95.040(2) provides a death penalty notice must "be filed and served on the defendant or the defendant's attorney" within 30 days of arraignment, unless the court, for good cause, extends or re-opens the time for filing and service. RCW 10.95.040(2). If the notice "is not filed and served as provided in this section, the prosecuting attorney may not request the death penalty." RCW 10.95.040(3).

RCW 10.95.040 does not define service, or describe the method of service. In *State v. Luvene*, 127 Wn. 2d 690, 717-19, 903 P.2d 960 (1995), and *State v. Dearbone*, 125 Wn.2d 173, 883 P.2d 303 (1994), we addressed RCW 10.95.040(2)'s timeliness requirement, but did not address the meaning of service under the statute. In *Dearbone* and *Luvene*, we adopted the view that the timeliness requirements for filing and service of the notice must be strictly met.

██ ██ This case does not present a constitutional issue as the notice requirement is statutory only. Neither *Dearbone* nor *Luvene* renders the notice a constitutional requirement. Clark argues the Sixth Amendment to the United States Constitution and article I, section 22 (amend 10) of the Washington Constitution require Clark be informed of the nature and cause of the accusations against him. Clark argues this right includes the right to notice of the prosecutor's intent to seek the death penalty. Indeed, Clark argues the death penalty notice adds an additional element to the underlying crime of aggravated murder, citing *State v. Campbell*, 103 Wn.2d 1, 25, 691 P.2d 929 (1984), *cert. denied*, 471 U.S. 1094 (1985).

Clark misreads *Campbell*. The statutory death notice here is not an element of the crime of aggravated murder. Instead, the notice simply informs the accused of the penalty that may be imposed upon conviction of the crime. While we require formal notice to the accused by information of the criminal charges to satisfy the Sixth Amendment and art. I, § 22, *State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995), we do not extend such constitutional notice to the *penalty* exacted for conviction of the crime. *State v. Lei*, 59 Wn.2d 1, 3, 365 P.2d 609 (1961) (no constitutional requirement of notice regarding habitual criminal offender penalties). Due process in sentencing requires only adequate notice of the possibility of the death penalty. *Lankford v. Idaho*, 500 U.S. 110, 111 S. Ct. 1723, 114 L. Ed. 2d 173 (1991).

██ We are confronted here with an issue of statutory interpretation. Both parties agree the Court may interpret RCW 10.95.040's service requirement by looking to analogous service statutes or rules. The State argues by leaving the notice with the staff of the defendant's attorney, it complied with CR 5 or substantially complied with RCW 4.28.080(15). The State also argues it may satisfy RCW 10.95.040 by serving the notice in a manner agreed to by defendant's attorney. Clark looks to RCW 4.28.080(15) and argues personal service on the defendant or the attorney

is required. Clark also contends CR 5 does not apply or was not complied with, and there could be no valid agreement waiving personal service.

■ As the Legislature itself did not define "service" under RCW 10.95.040(2), and, as the parties contend, there are multiple reasonable meanings to be given the term "service," we are faced with an ambiguous statute to interpret. *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994).

We decline initially to adopt an interpretation of RCW 10.95.040 that allows any reasonable method of providing notice, as the State advocates. The determination to seek the death penalty must be made in a particularly careful and reliable manner and in accordance with statutory procedures. *Luvene*, 127 Wn.2d at 719 n.8. In a death penalty case, "there is a need for reliability in the determination that death is the appropriate penalty," *Woodson v. North Carolina*, 428 U.S. 280, 304-05, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976). Courts must "insure that every safeguard is observed." *State v. Frampton*, 95 Wn.2d 469, 478, 627 P.2d 922 (1981).

■ For these reasons, in *Dearbone*, 125 Wn.2d at 182, where the State gave timely notice of intent to seek the death penalty by speaking in person to defense counsel and through voice mail, the Court declined to engraft the doctrine of substantial compliance onto RCW 10.95.040. For the same reasons, we do not now adopt a liberal construction of RCW 10.95.040, parallel to the adoption of a liberal construction of RCW 4.28.080(15) discussed in *Wichert v. Cardwell*, 117 Wn.2d 148, 812 P.2d 858 (1991), or *Sheldon v. Fettig*, 129 Wn.2d 601, 919 P.2d 1209 (1996), permitting actual notice or any method reasonably likely to result in notice. Additionally, as Clark points out, in 1996, the Washington House of Representatives declined to pass a bill allowing service of the death penalty notice by any means likely to result in notice. House Bill 2668, 54th Leg., 1st Sess. (1996). The failure of the Legislature to enact such a bill indicates a legislative belief that ser-

vice of the notice under RCW 10.95.040 was not as liberal as the State now contends. *Spokane County Health Dist. v. Brockett*, 120 Wn.2d 140, 153-54, 839 P.2d 324 (1992).

Clark argues that only "personal" service on a defendant or the defendant's attorney satisfies RCW 10.95.040, citing cases arising under RCW 4.28.080. *See, e.g., Nitardy v. Snohomish County*, 105 Wn.2d 133, 712 P.2d 296 (1986) (service on county executive's secretary insufficient where statute required service on county auditor); *Landreville v. Shoreline Community College*, 53 Wn. App. 330, 766 P.2d 1107 (1988) (service on administrative assistant to attorney general insufficient where statute mandated service on attorney general or assistant attorney general); *Meadowdale Neighborhood Comm. v. City of Edmonds*, 27 Wn. App. 261, 616 P.2d 1257 (1980) (service on mayor's secretary insufficient where statute required service on mayor); *Weiss v. Glemp*, 127 Wn.2d 726, 732, 903 P.2d 455 (1995). Clark contends personal service is the classic form of service of process intended here by the Legislature. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950); *Kennedy v. Korth*, 35 Wn. App. 622, 668 P.2d 614, *review denied*, 100 Wn.2d 1026 (1983) (personal service required for jurisdiction).

We decline to adopt Clark's view that RCW 10.95.040 mandates personal service or, in the absence of statutory direction, service invariably denotes personal service. By its terms, RCW 10.95.040 does not state the death penalty notice shall be *personally* served on the defendant or counsel, and does allow service of the notice on the defendant's attorney.[2] If the Legislature intended personal service on an attorney, it could have expressly provided for such personal service in RCW 10.95.040. Moreover, the Legislature is well acquainted with the difference between substitute service and personal service. Indeed, RCW

---

[2]Personal service usually denotes service on a party. *Wichert*, 117 Wn.2d at 156. Service on a party's attorney suggests substitute service rather than personal service. Plainly, permitting service on the defendant or defendant's counsel in RCW 10.95.040, the Legislature declined to limit service to traditional personal service.

4.28.080 itself specifies 14 methods of service upon various corporate entities. When it refers to service in all other cases, including service upon an individual defendant, RCW 4.28.080 specifies such service shall be "to the defendant *personally*, or by leaving a copy of the summons at the house of his usual abode with some person of suitable age and discretion then resident therein." RCW 4.28.080(15) (emphasis added). In contrast, RCW 10.95.040 does not require service on the defendant or attorney "personally."

We also decline to adopt RCW 4.28.080 and the cases arising under it for guidance because RCW 4.28.080 applies to service of original process. RCW 10.95.040 relates only to notice *after* the aggravated murder charges have been filed.

■ We believe CR 5 provides the best guidance to the interpretation of RCW 10.95.040, as it pertains specifically to service of notices on counsel after commencement of an action. CR 5(a). CR 5(b) states service on an attorney shall be effected by mailing the document to the attorney, or by delivering it to the attorney, meaning "handing it to the attorney . . . or leaving it at his office with his clerk or other person in charge thereof." CR 5(b) also provides service may be made by delivery to the attorney's office where "there is no one in charge, [by] leaving [the document] in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein."

■ ■ Although CrR 8.4 specifically provides CR 5 governs service of written motions in a criminal case, it does not specifically address service of a notice in a criminal case. Nevertheless, CR 5 is the most analogous civil rule for service of a notice. "Where the criminal rules are silent, the civil rules can be instructive as to matters of procedure. *State v. Hackett*, 122 Wn.2d 165, 170, 857 P.2d 1026 (1993); *State v. Gonzalez*, 110 Wn.2d 738, 744, 757 P.2d 925 (1988)." *State v. Moen*, 129 Wn.2d 535, 540 n.2,

919 P.2d 69 (1996). Since RCW 10.95.040 and CR 5 both deal with service of a notice after an attorney has appeared in a case, CR 5 is instructive as to the meaning of service in RCW 10.95.040. RCW 10.95.010, which provides that the death penalty statute may not be varied by court rule, is not violated by this interpretation as the court rule does not vary the requirements of RCW 10.95 but gives some guidance as to the meaning of the statute.

■ There was service in accord with CR 5 in this case. Relying on the agreed arrangement for service, the State left the notice in the designated box in a restricted area in the Prosecutor's Office, and the Public Defender staff retrieved it, took it to the Public Defender Office, stamped it received, and left it in the appropriate attorney's mailbox. The notice was delivered to defendant's attorney in the same manner as every motion was served for several years.

Clark notes the State did not physically bring the papers inside the Public Defender Office, but where the delivery was effected according to the method chosen and controlled by the Public Defender Office and the Public Defender Office assumed physical control of the notice before it even left the Prosecutor's office, it was a reliable method of service meeting the requirements of CR 5.[3]

## CONCLUSION

We hold the notice of special sentencing proceeding was timely served and filed for purposes of RCW 10.95.040

---

[3]In addition, "contracting as to a special mode of service," a method of service not enumerated in the service statutes, may be a valid means of service. *Lee v. Barnes*, 58 Wn.2d 265, 268, 362 P.2d 237 (1961); *Thayer v. City of Edmonds*, 8 Wn. App. 36, 41-42, 503 P.2d 1110 (1972), *review denied*, 82 Wn.2d 1001 (1973) (agreement summons could be left in a door); *see Weiss*, 127 Wn.2d at 733 (noting *Lee* and *Thayer* with approval; defendant's consent justifies departure from terms of service statute). While a defense lawyer would not have authority to give away a defendant's constitutional rights without the defendant's agreement, the mode of delivery of the notice implicates no constitutional right. In light of our opinion, we express no view on whether the parties here properly contracted for service of the notice.

because the statutory service on defense counsel was in accordance with CR 5.

This was a close case, and needlessly so. The State can easily avoid all the issues discussed in this opinion by the simple expedient, for instance, of serving the statutory notice upon the defendant or counsel in open court, on the record. The State should be aware in light of *Dearbone* and *Luvene* that anything less than a punctilious approach toward the filing and service of the statutory notice in a death penalty case is a risky practice. Especially when the ultimate penalty is involved, this Court's duty is to ensure the defendant receives every statutory protection the Legislature has provided. We will not condone sloppy practice in service of the notice under RCW 10.95.040.

The order of the Snohomish County Superior Court striking the notice of special sentencing proceeding is vacated. We remand the case to the Snohomish County Superior Court for further proceedings pursuant to RCW 10.95.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, ALEXANDER, and SANDERS, JJ., concur.

Reconsideration denied November 1, 1996.