**FILED**
**OCTOBER 28, 2021**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON | ) | |
| | ) | No.  37661-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OLAJIDE ADEL FLETCHER, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

STAAB, J. — This case raises several issues of first impression pertaining to the collateral attack of a sentence.  Olajide Fletcher pleaded guilty to a reduced charge of second degree assault with a firearm and one count of unlawful possession of a firearm. Pursuant to the plea agreement, the State recommended an exceptional sentence of 120 months (the statutory maximum).  The sentencing judge followed the recommendation. Shortly after sentencing Mr. Fletcher filed a motion to modify the judgment and sentence pursuant to CrR 7.8.  Three years later, on July 15, 2019, Mr. Fletcher filed a second CrR 7.8 motion, contending that the court miscalculated his offender score and standard range sentence before imposing the exceptional sentence.  Following a series of hearings, the superior court granted Mr. Fletcher's motion, holding that it was timely, good cause was shown for failing to bring the offender score issue in his first motion, and the

miscalculated offender score prejudiced Mr. Fletcher.  At the resentencing hearing, the court imposed a high-end standard range sentence of 77 months.

The State filed this direct appeal and we reverse the trial court's decision.  We hold that a judgment and sentence is facially invalid when it contains a miscalculated standard range even when the defendant receives the agreed-upon exceptional sentence. While Mr. Fletcher's motion was not untimely, we conclude that it was successive because Mr. Fletcher did not establish good cause for failing to raise the issue in his first motion.  Ordinarily, when the court of appeals determines that a collateral attack is timely but successive, we transfer the case to the Supreme Court.  In this case, however, since the superior court addressed the motion on the merits, and we are reviewing the case in our appellate capacity and not as original jurisdiction, the transfer provisions of RAP 16.5(c) do not apply and we retain appellate jurisdiction to decide the case.  Because Mr. Fletcher's motion was successive without good cause, we reverse the superior court's order granting Mr. Fletcher's motion and reinstate the original sentence.

## FACTS

In November 2015, the State charged Olajide Adel Fletcher with one count of first degree assault with a firearm or deadly weapon.  The charge alleged that Mr. Fletcher shot Alex Tauveve five times in the legs.  According to Mr. Fletcher, Mr. Tauveve took Mr. Fletcher's televisions and when Mr. Fletcher tried to recover the televisions, Mr. Tauveve pulled a gun on him.  Mr. Fletcher overpowered Mr. Tauveve, taking the gun

2

and shooting him. Mr. Fletcher and his girlfriend fled to Montana, where U.S. Marshalls took them into custody.

The State agreed to reduce the first degree assault charge to second degree assault, and refrain from filing charges against Mr. Fletcher's girlfriend if Mr. Fletcher would stipulate to an exceptional sentence of 120 months, the statutory maximum. The statement on plea of guilty identified Mr. Fletcher's offender score as "8" on the second degree assault count, with a standard range of 53-70 months and a firearm enhancement of 36 months, and an offender score of "5" on the unlawful possession count, with a standard range of 41-54 months. The statement did not include Mr. Fletcher's criminal history, although it indicated that it was attached as a separate document. The parties agreed that the prosecutor would recommend "an exceptional sentence/incarceration of 84 months on Count 1 (with a three yr deadly weapon enhancement), 41 months on Count 2 to run concurrent, for a total of 10 years." Clerk's Papers (CP) at 14. Mr. Fletcher "agree[d] there are substantial and compelling reasons for an exceptional sentence in this case." CP at 19.

Mr. Fletcher was sentenced on February 23, 2016. His offender scores for the two charges were calculated as "8" and "5", based on his criminal history of one adult conviction for first degree theft, a juvenile conviction for second degree assault, and juvenile convictions for two counts of attempted second degree assault. The parties also agreed that Mr. Fletcher had a prior third degree assault conviction that washed out.

3

Based on the offender score, the parties calculated the standard range sentence as 89 to 106 months. The sentencing court followed the recommendation and imposed an exceptional sentence of 120 months.[1]

On March 18, 2016, Mr. Fletcher filed a motion to modify the judgment and sentence pursuant to CrR 7.8, seeking a standard range sentence of 106 months in confinement. The superior court transferred the motion to this court for consideration as a personal restraint petition. This court dismissed the petition as frivolous, noting that Mr. Fletcher stipulated to the exceptional sentence. Therefore he could not challenge the exceptional sentence he agreed to without challenging the entire plea agreement, which he did not do. *See In re Pers. Restraint of Fletcher*, No. 34430-4-III (Wn. Ct. App. Mar. 3, 2017).

Three years later Mr. Fletcher filed a second CrR 7.8 motion, arguing that the sentencing court incorrectly calculated his offender score, thus rendering his sentence unlawful. Specifically, he asserted that the court incorrectly included his two juvenile second degree attempted assaults from May 2006 in his offender score when those crimes should have washed out pursuant to RCW 9.94A.525(4) and *State v. Moeurn*, 170 Wn.2d 169, 240 P.3d 1158 (2010). Mr. Fletcher argues that his correct offender score on the

---

[1] Grant County Superior Court Judge David Estudillo accepted Mr. Fletcher's guilty plea and followed the recommended 120-month exceptional sentence. The motion at issue in this appeal, and the subsequent resentencing, were heard by Judge John Antosz.

second degree assault charge was 4, rather than 8, and the score for the unlawful

possession of the firearm was 3 rather than 5.

In response, the State argued that the motion was untimely, barred as successive

under RCW 10.73.140, and failed to establish prejudice because the State and Mr.

Fetcher negotiated the exceptional sentence as part of the plea agreement, with no

reference to the offender score or standard range.

Mr. Fletcher then responded by filing a declaration certifying that his previous

petition did not present similar grounds and arguing that he had good cause for not

raising the offender score in his previous petition because he did not have access to his

judgment and sentence. Mr. Fletcher argued that the lack of access was "an external

objective impediment" that prevented him from raising the issue. According to Mr.

Fletcher, he requested a copy of his judgment and sentence from defense counsel, who

told Mr. Fletcher he could not have the judgment in his personal possession when he was

transferred to prison but that he would receive a copy when he arrived at the corrections

center. Mr. Fletcher did not receive the judgment when he arrived at the corrections

center, and when he requested his legal documents from the law librarian, he only

received his statement on plea of guilty. Mr. Fletcher claims the plea statement listed his

offender scores but did not contain any information regarding his criminal history, such

as the dates of the crimes and the sentences. Mr. Fletcher asserted that he did not receive

a copy of his judgment and sentence, containing his criminal history, until the State filed

5

a response to his first personal restraint petition in July 2016. At that time, his motion was already filed and before this court for consideration.

Ultimately, the superior court held that Mr. Fletcher's judgment was facially invalid, and thus his motion was timely. The court also found good cause for not including the issue in his first motion. Finally, the court found prejudice, concluding that if the sentencing court had known the parties relied on an erroneous offender score and standard range when they negotiated the agreement, the sentencing court likely would have departed from the agreement and imposed a lower sentence. Accordingly, the court held that Mr. Fletcher was entitled to re-sentencing with the proper offender score and proper standard range. The court held that Mr. Fletcher's stipulation to the firearm enhancement and the stipulation to the exceptional sentence remained in place and could not be withdrawn, but that Mr. Fletcher could argue for a sentence shorter than 120 months. At resentencing, the court ordered a high-end standard range sentence of 77 months.

The State filed this timely appeal.

## ANALYSIS

A. WAS THE CrR 7.8 MOTION TIMELY?

We are asked to decide whether the miscalculation of a petitioner's offender score renders a judgment and sentence facially invalid when the trial court does not impose a standard range sentence but instead imposes the exceptional sentence recommended by

the parties. We hold that when the miscalculation of an offender score and standard range sentence can be determined from the judgment,[2] it renders the judgment facially invalid even when the court imposes the recommended exceptional sentence.

Mr. Fletcher filed his collateral attack in superior court as a motion for relief from judgment under CrR 7.8(b). The procedures for filing such a motion are governed by chapter 10.73 RCW. CrR 7.8(b). Similar to other collateral challenges, a motion under CrR 7.8(b) may not be filed more than one year after the judgment becomes final "if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.090(1).

"Generally, a judgment and sentence is facially invalid 'if it exceeds the duration allowed by statute and the alleged defect is evident on the face of the document without further elaboration.'" *State v. Chambers*, 176 Wn.2d 573, 583-84, 293 P.3d 1185 (2013)

---

[2] The State concedes that the offender score was miscalculated and does not argue that calculating the offender score requires us to go beyond the face of the judgment and plea documents. The parties are correct that an incorrectly calculated offender score may render a judgment invalid on its face. *See In re Goodwin*, 146 Wn.2d 861, 867, 50 P.3d 618 (2002) and *In re LaChapelle*, 153 Wn.2d 1, 6, 100 P.3d 805 (2004) ("A sentence, which was improperly calculated using previously washed out juvenile offenses, is invalid on its face."). In both of these cases, however, it appears that the washout could be determined from the information provided in the judgment and plea paperwork. This distinction was noted in *In re Pers. Restraint of Rowland*, 149 Wn. App. 496, 504, 204 P.3d 953 (2009), which held that "[u]nlike in *Goodwin*, here there is nothing on the face of Rowland's judgment and sentence to make it apparent that his offender score should have been two rather than three." *See also*, *In re Pers. Restraint of Banks*, 149 Wn. App. 513, 515, 204 P.3d 260 (2009) (Judgement was not facially invalid where calculation of offender score required court to consider documents beyond the judgment).

(quoting *In re Pers. Restraint of West*, 154 Wn.2d 204, 211, 110 P.3d 1122 (2005)). A judgment is facially "invalid" if the trial court exercised power that it did not have, most typically by exceeding its substantive or statutory authority, as opposed to its procedural authority. *In re Pers. Restraint of Flippo*, 187 Wn.2d 106, 110, 385 P.3d 128 (2016); *In re Pers. Restraint of Snively*, 180 Wn.2d 28, 32, 320 P.3d 1107 (2014); *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 136, 267 P.3d 324 (2011).

Because this is a collateral attack, it is not enough to point out an error that may be obvious on the face of the judgment. In *Coats*, the court rejected the petitioner's argument that any error of law, such as an error concerning the maximum possible sentence renders the judgment and sentence facially invalid. *Id*. at 135. Instead, the court held that a judgment is invalid "only where a court has in fact exceeded its statutory authority in entering the judgment or sentence." *Id*. While the sentencing court misstated the maximum possible sentence for one of the convictions, it nevertheless handed down a sentence within the standard range for that charge. Therefore, while Coats could point to error, the sentencing court did not exceed its statutory authority, and the judgment was facially valid. *Id*. at 143.

Examples of facially invalid judgments include cases where the sentence exceeded the duration allowed by statute. *In re Pers. Restraint of McWilliams*, 182 Wn.2d 213, 215 n.2, 340 P.3d 223 (2014); *In re Pers. Restraint of Tobin*, 165 Wn.2d 172, 176, 196 P.3d 670 (2008). A judge's notation on the judgment that the defendant waived early

8

release was beyond the court's authority and rendered the judgment facially invalid. *West*, 154 Wn.2d at 211-12. A conviction for a then-nonexistent crime is also facially invalid. *In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 857, 100 P.3d 801 (2004); *In re Pers. Restraint of Knight*, 4 Wn. App. 2d 248, 252-53, 421 P.3d 514 (2018).[3]

On the other hand, errors that do not affect the petitioner's rights or sentence do not render a judgment and sentence facially invalid. In *Toledo-Sotelo*, the trial court miscalculated the petitioner's offender score but ultimately imposed a sentence within the correct standard range. *In re Pers. Restraint of Toledo-Sotelo*, 176 Wn.2d 759, 767, 297 P.3d 51 (2013). "For a judgment to exceed the court's statutory authority, we require more than an error that 'invite[s] the court to exceed its authority'; the sentencing court must actually pass down a sentence not authorized under the [Sentencing Reform Act] SRA." *Id.* at 767 (quoting *Coats*, 173 Wn.2d at 136). Because the court reached the correct result required by the SRA, the procedural error of miscalculating the offender score did not render the judgment facially invalid. *Id.* at 768.

More recently, our Supreme Court has clarified the distinction between substantive authority and procedural requirements. In *Flippo*, the court held that failing

---

[3] In *Finstad*, the State stipulated that lack of findings to support an exceptional sentence rendered the judgment facially invalid. *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 505-06, 301 P.3d 450 (2013). The court accepted the stipulation, noting that the parties were not meaningfully adverse in the issue. *Id.* Given the lack of opposition, it is hard to say that *Finstad* stands for the proposition that the lack of findings renders a judgment invalid.

to conduct an individualized inquiry into a criminal defendant's ability to pay legal financial obligations (LFOs) does not render the imposition of legal fees facially invalid. 187 Wn.2d at 110. "The specific grant of authority to impose discretionary LFOs and the duty to engage in an individualized financial inquiry regarding a defendant's present and future likely ability to pay are distinct components of the discretionary LFO statute, and only the former has any bearing on the question of facial validity." *Id*. at 110.

Collectively, these cases hold that a court exceeds its authority when it miscalculates the standard range, resulting in a sentence outside the correct standard range, or when the sentence exceeds the statutory maximum for a crime. Mr. Fletcher's case falls in the middle. The parties miscalculated his standard range but stipulated to facts sufficient to impose an exceptional sentence. Since the exceptional sentence was not "based on" the miscalculated standard range, we must decide whether the exceptional sentence nevertheless exceeded the court's authority, rendering the judgment facially invalid. In other words, is the miscalculation of a standard range before imposing an exceptional sentence a procedural error or a substantive error?

To answer this question, we turn to the court's authority under the SRA. A court may impose an exceptional sentence above the standard range "if it finds, considering the *purpose* of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535 (emphasis added). In *State v. Parker*, the Supreme Court held that the SRA's "purpose" included proportionality, which

10

necessarily requires consideration of the presumptive sentence or standard range. 132

Wn.2d 182, 187 n.6, 937 P.2d 575 (1997). Consequently, a sentencing court must

correctly determine the standard range or presumptive sentence before imposing an

exceptional sentence. *Id*. at 188. In this case, the superior court relied on the holding in

*Parker* to find the judgment in Mr. Fletcher's case facially invalid.

As the State points out, however, *Parker* was a direct appeal and only considered

whether the failure to correctly calculate the standard range was legal error. *Parker* did

not determine whether a court exceeds its authority by imposing an exceptional sentence

after incorrectly calculating the standard range. In *Parker*, the court held that the findings

necessary to impose an exceptional sentence must include a correctly calculated standard

range. The State argues that *Parker* establishes a procedural rule, not a substantive rule

because calculating the standard range is simply a step toward imposing an exceptional

sentence that is not based on the standard range. As the State points out, while *Parker*

held it was error to miscalculate the standard range before imposing an exceptional

sentence, it did not hold that a court exceeds its authority when it fails to take this step.

While the State's characterization of *Parker* is correct, several other Supreme

Court decisions strongly suggest that a court does exceed its statutory authority when its

findings do not support an exceptional sentence. In *Goodwin*, the court found a judgment

to be facially invalid when the sentence imposed was based on an offender score that

incorrectly included washed-out juvenile offenses. *In re Pers. Restraint of Goodwin*, 146

11

Wn.2d 861, 865-67, 50 P.3d 618 (2002). The court reasoned that because Goodwin's offender score was miscalculated, his standard range was miscalculated, and the sentence imposed by the trial court exceeded the standard range.

While *Goodwin* is similar to this case, as the State points out, it is not controlling because the sentencing court in *Goodwin* was attempting to impose a standard range sentence. *Id*. at 864. Significantly, however, the sentence actually imposed in *Goodwin* was above the (correctly calculated) standard range. In other words, it was an exceptional sentence. Implicit in *Goodwin's* holding is the conclusion that a sentence above the (correct) standard range, without the necessary findings, exceeds the court's authority and is facially invalid. *See Toledo-Sotelo*, 176 Wn.2d at 768 (In *Goodwin*, 146 Wn.2d at 877-78, "[t]his court held that the sentence exceeded the court's statutory authority because it was 'based upon a miscalculated offender score (*miscalculated upward*).'").

The Supreme Court has similarly found that a court exceeds its authority when the jury's verdict did not support the sentence enhancement imposed by the court. In *Scott*, the Supreme Court considered whether the petitioner's sentence, based on a firearm enhancement, was facially invalid when the jury's verdict only found a deadly weapon enhancement. *In re Pers. Restraint of Scott*, 173 Wn.2d 911, 271 P.3d 218 (2012). In other words, the finding (by the jury) was insufficient to support the sentence enhancement actually imposed. Ultimately, the court found that since the verdict did not

support the application of the enhancement, the judgment was facially invalid. *Id.* at 917-18.

Finally, in *Chambers*, the Supreme Court found a judgment to be facially invalid when the defendant received an exceptional sentence and there were no written findings of fact and conclusions of law setting forth the reasons for the exceptional sentence as required by the SRA. *Chambers*, 176 Wn.2d at 584.

The collective holdings of *Goodwin*, 146 Wn.2d 861, *Parker*, 132 Wn.2d 182, *Scott*, 173 Wn.2d 911, and *Chambers*, 176 Wn.2d 573, suggest that a sentencing court exceeds its authority when it imposes an exceptional sentence that is not supported by necessary findings. The findings necessary to impose an exceptional sentence include a correctly calculated standard range. Since the standard range in this case was incorrectly calculated, the sentencing court exceeded its authority by imposing an exceptional sentence. Because the court exceeded its authority, the judgment is facially invalid and Mr. Fletcher's motion under CrR 7.8(b) is timely.

B.  DOES MR. FLETCHER DEMONSTRATE GOOD CAUSE FOR FAILING TO INCLUDE THE OFFENDER SCORE ISSUE IN HIS FIRST MOTION?

Having determined that the one-year time bar does not apply to Mr. Fletcher's collateral attack, we must next decide whether he is exempt from the bar on successive petitions. After he was sentenced, Mr. Fletcher filed a motion to modify the judgment and sentence pursuant to CrR 7.8, seeking a standard range sentence of 106 months. The

No. 37661-3-III
*State v. Fletcher*

Superior court transferred the motion to this court for consideration as a personal restraint petition. This court dismissed the petition as frivolous, noting that Mr. Fletcher stipulated to the exceptional sentence.

Mr. Fletcher filed the current action in superior court as a motion for relief from judgment under CrR 7.8(b).[4] Motions under this rule are considered a form of collateral attack and are subject to the provisions against successive petitions under RCW 10.73.140. *In re Pers. Restraint of Becker*, 143 Wn.2d 491, 496, 20 P.3d 409 (2001). Under RCW 10.73.140, a second or subsequent collateral attack will not be considered unless the petitioner certifies, "that he or she has not filed a previous petition on similar grounds, and shows good cause why the petitioner did not raise the new grounds in the previous petition." In this second motion, the parties agree that Mr. Fletcher's offender score issue is new and was not raised in his first petition. The parties disagree, however, on whether he has demonstrated good cause for failing to raise this issue in his first motion for relief from judgment.

The term "good cause" is not defined in the statute. Instead, our courts have adopted a definition of "good cause" as that term has been used in other settings. For example, one way to show good cause is to demonstrate that there has been a significant

---

[4] CrR 7.8(b): "The motion shall be made within a reasonable time and for reasons (1) and (2) not more than 1 year after the judgment, order, or proceeding was entered or taken, and is further subject to RCW 10.73.090, .100, .130, and .140."

14

intervening change in the law. *In re Pers. Restraint of Johnson*, 131 Wn.2d 558, 567, 933 P.2d 1019 (1997).

"Good cause" has also been defined to include an "external objective impediment," as opposed to a "self-created hardship." *State v. Crumpton*, 90 Wn. App. 297, 302, 952 P.2d 1100 (1998) (quoting *State v. Dearbone*, 125 Wn.2d 173, 180-81, 883 P.2d 303 (1994)). In *Crumpton*, the petitioner filed a motion for a new trial alleging newly discovered evidence in the form of hearsay statements from witnesses. After this motion was denied, the petitioner filed another motion for a new trial or relief from judgment, this time submitting first-hand declarations from witnesses and alleging newly discovered evidence. The petitioner alleged he had good cause for not including the first-hand declarations in his first motion in that he was incarcerated, indigent, and could not locate the witnesses. After adopting a definition of "good cause" from RCW 10.95.040, the notice of intention to seek a death penalty statute, the court found that Crumpton's reasons were self-created hardships not otherwise caused by external objective impediments. *Id*. at 302. Thus, Crumpton's second petition was successive and properly dismissed.

Since *Crumpton* was decided in 1998, there have not been any published cases further defining good cause as used in RCW 10.73.140. In this case, Mr. Fletcher does not allege that a material intervening change in the law provided good cause. Instead, he contends that his failure to raise the offender score issue in his first petition was due to an

15

external objective impediment. Specifically, he contends that he was not given a copy of his judgment at sentencing and did not have a copy when he filed his first petition. The Superior Court accepted Mr. Fletcher's reason as good cause. The court distinguished *Crumpton* by noting that *Crumpton* dealt with a similar issue raised in successive motions, whereas Fletcher was raising a new issue.

We disagree with the Superior Court's analysis of the law and application to the facts. The statute requires a second petition to raise new issues and show good cause for not raising them in the first petition. RCW 10.73.140. The superior court's analysis seems to conflate the two factors. While the successive motions in *Crumpton* addressed a similar issue, the case is relevant for its legal analysis on good cause. The court defined good cause and then applied that definition to the facts of the case. The similarities between the two motions were relevant in the application, not the holding.

Applying the definition of good cause in this case, we find that Mr. Fletcher's reasons for not including his offender score issue in his first petition are not convincing and are self-created. Mr. Fletcher's argument was legally and factually available to him when he filed his first petition. His plea statement identified his offender score as 8 and 5, and also indicated that a copy of his criminal history was attached. Significantly, Mr. Fletcher received a copy of his judgment in July or August 2016 as part of the State's response to his first petition. If access to the judgment was the issue, Mr. Fletcher could have amended his first petition after obtaining a copy. RAP 16.8(e); *In re Pers. Restraint*

16

*of Meredith*, 191 Wn.2d 300, 422 P.3d 458 (2018). Instead, he waited almost three years after receiving a copy of the judgment before filing a second motion for relief. While we decline at this time to incorporate a requirement of due diligence into the definition of good cause, we agree that the considerable lapse in time discredits Mr. Fletcher's purported reason.

Since we find that Mr. Fletcher has failed to show good cause for not including the offender score issue in his first motion, we conclude that his second motion is successive and barred by the requirements of RCW 10.73.140 as applied through CrR 7.8(b).

C.   REMEDY.

Having decided that Mr. Fletcher's motion is timely but successive, we must decide the remedy. Both the State and Mr. Fletcher suggest that since the successive petition bar under RCW 10.73.140 only applies to the Court of Appeals, we should transfer this case to the Supreme Court. *See* RAP 16.3 (Supreme Court and Court of Appeals have original concurrent jurisdiction over personal restrain petitions not involving the death penalty).

This recommendation misconstrues the status of this case. Mr. Fletcher's motion was filed in superior court and decided on the merits. It comes to us on direct appeal, not as a transfer. The jurisdictional limitations of RCW 10.73.140 apply to personal restraint petitions filed as an original action in the court of appeals. Because we review this case in our appellate capacity, not as an original action, the transfer provisions of RAP 16.5(c)

17

No. 37661-3-III
*State v. Fletcher*

do not apply. While there are no published cases recognizing this procedural process, in an unpublished decision we followed this course after direction from the Supreme Court. *See State v. Yates*, No. 33703-1-III, slip op. at 1 (Wash. Ct. App. Jul. 11, 2017) (unpublished), http://courts.wa.gov/opinions/pdf/337031_unp.pdf (citing Order, *State v. Yates*, No. 93772-9 (Wash. Jan. 5, 2017)).

We grant the State's appeal, reverse the superior court's decision granting Mr. Fletcher's CrR 7.8 motion, and direct the superior court to reinstate the original judgment and sentence.

_____
Staab, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Siddoway, J.