[Nos. 82363-4; 83923-9.   En Banc.]
Argued January 24, 2012.   Decided August 23, 2012.

*In the Matter of the Personal Restraint of* RONNIE JACKSON, JR., *Petitioner.*

*In the Matter of the Personal Restraint of* SALVADOR RIVERA, *Petitioner.*

*Jeffrey E. Ellis* (of *Oregon Capital Resource Center*), for petitioner Jackson.

*Nancy P. Collins* (of *Washington Appellate Project*), for petitioner Rivera.

*David S. McEachran, Prosecuting Attorney for Whatcom County*, and *Hilary A. Thomas, Deputy*; and *Mark E. Lindquist, Prosecuting Attorney for Pierce County*, and *Kathleen Proctor, Deputy*, for respondent.

¶1 GONZÁLEZ, J. — Petitioners Ronnie Jackson Jr. and Salvador Rivera filed personal restraint petitions to challenge the firearm enhancements they received as part of their sentences, which became final in 2002. In response, we must decide if the rules we announced in *State v. Recuenco*, 154 Wn.2d 156, 110 P.3d 188 (2005) (*Recuenco* I) and *State v. Recuenco*, 163 Wn.2d 428, 180 P.3d 1276 (2008) (*Recuenco* III) apply retroactively. The rules in question are (1) that a firearm enhancement cannot be based on a jury's general "deadly weapon" finding, *see Recuenco* I, 154 Wn.2d at 162; *Recuenco* III, 163 Wn.2d at 440; and (2) that an information must particularly identify any firearm enhancements sought by the State in order to authorize such enhancements at sentencing, *see Recuenco* III, 163 Wn.2d at 434-36. In other words, we must decide if it is too late to challenge enhancements imposed before the *Recuenco* I and *Recuenco* III decisions. We find that *Recuenco* I and *Recuenco* III are not retroactive as to either issue and hold that Rivera and Jackson are not entitled to any relief on collateral review.

## I. PROCEDURAL HISTORY

¶2 Rivera and Jackson present similar circumstances. Rivera was convicted of murder in the first degree for shooting a man to death. Jackson was convicted of multiple crimes, including attempted murder and assault, for repeatedly shooting at certain victims.

¶3 In both cases, the State charged that the crimes were committed with a firearm and indicated the State's intent to seek an enhancement. In Rivera's case, the information, which was filed on March 31, 1998, alleged that Rivera "was armed with a deadly weapon" and then specified that the

weapon was "a handgun, for purposes of the deadly weapon enhancement of RCW 9.94A.125 and 9.94A.310(3)(a)." Rivera Br., App. at 2. At the time, RCW 9.94A.310(3)(a) dealt entirely with firearm enhancements. *See* Laws of 1997, ch. 365, § 3. In Jackson's case, the information, which was filed on June 30, 1997, consistently alleged that Jackson was "armed with a deadly weapon" and specified that the weapon was "a handgun . . . invoking the provisions of RCW 9.94A.310 and adding additional time to the presumptive sentence as provided in RCW 9.94A.370." Jackson Pers. Restraint Pet. (Jackson PRP), App. B at 2, 3, 4, 5. At the time, RCW 9.94A.370 referenced "additional time for deadly weapon findings" to be imposed by trial courts at sentencing. Laws of 1996, ch. 248, § 1(1); *cf. In re Pers. Restraint of Cruze*, 169 Wn.2d 422, 429-30, 237 P.3d 274 (2010) (noting that "deadly weapon" enhancement denotes a broader category of both firearm and nonfirearm enhancements).

¶4 Rivera and Jackson were convicted, and in each case, the jury found by special verdict that the defendant had been armed with a "deadly weapon." *See* Rivera Br., App. at 3; Jackson PRP, App. C. As a result, in each case, the trial court imposed a sentence that included a deadly weapon enhancement of 60 months—an amount applicable only to a firearm enhancement. Rivera Br., App. at 5-11 (noting "special verdict/finding for use of deadly weapon," citing RCW 9.94A.310(3)(a) on firearm enhancements, and imposing enhancement of 60 months "for deadly weapon"); Jackson PRP, App. D (noting "special verdict/finding for use of a firearm" and imposing resulting enhancement of 60 months).[1]

¶5 Both convictions became final as of 2002. On June 5, 2008, Rivera filed a motion to vacate his firearm sentence enhancement. That motion was transferred to the Court of

---

[1] Rivera's judgment and sentence contains a typographical error, referring to RCW "9.94A.310(3)(a) *a*" (emphasis added). Rivera Br., App. at 5. Rivera's counsel argues we should completely disregard the reference because it is a "nonexistent" statute. *Id.* at 8. The intended reference is clear, however, and we reject counsel's argument as frivolous and without merit.

Appeals for consideration as a personal restraint petition, and the Court of Appeals denied the petition. *In re Pers. Restraint of Rivera*, 152 Wn. App. 794, 218 P.3d 638 (2009). We granted discretionary review. On November 3, 2008, Jackson filed a personal restraint petition directly with this Court. The two cases were consolidated on November 3, 2011. We have jurisdiction under Const. art. IV, § 4, and RAP 13.3 and 16.3(c).

## II. ANALYSIS

¶6 Rivera and Jackson rely on rules that were announced after their convictions became final. Because these new rules are not retroactive, the sentences of Rivera and Jackson, which were legal at the time, remain legally authorized and facially valid. Their petitions for review are thus rendered time barred.

### A. LEGAL BACKGROUND

¶7 The law governing sentence enhancements has developed substantially since 2002, when the convictions of Rivera and Jackson became final. In 2004, the United States Supreme Court decided *Blakely v. Washington*, 542 U.S. 296, 304, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), holding that "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, . . . the judge exceeds his proper authority." (Citation omitted.) In other words, *Blakely* held that all factual findings necessary to the imposition of a sentence enhancement (other than the fact of a prior conviction) must be submitted to the jury and proved beyond a reasonable doubt. *Id.* at 301-05. Prior to *Blakely*, Washington courts allowed sentence enhancements to be based on factual findings by the trial court, as opposed to the jury, and without the need for proof beyond a reasonable doubt. *See, e.g.*, *State v. Gore*, 143 Wn.2d 288, 315, 21 P.3d 262 (2001) ("We hold that the factual basis for an exceptional sentence upward need not be charged, submitted to the jury, and proved beyond a reasonable

doubt."); *State v. Blakely*, 111 Wn. App. 851, 870-71, 47 P.3d 149 (2002) (citing *Gore*), *rev'd*, 542 U.S. at 301 (same).

¶8 In 2005, in light of *Blakely*, we clarified that even when the jury "return[s] a special verdict that [the defendant was] armed with a *deadly weapon*," without "an explicit firearm finding by the jury, the court's imposition of a firearm sentence enhancement violate[s] [the] jury trial right as defined by . . . *Blakely*." *Recuenco* I, 154 Wn.2d at 160, 162 (emphasis added), *rev'd on other grounds*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006) (*Recuenco* II). The United States Supreme Court, on review, then held that this type of violation of "the jury trial right" is subject to harmless error analysis under federal law. *See Recuenco* II, 548 U.S. at 218-22.

¶9 In 2008, on remand, we clarified that the error in *Recuenco* occurred when the trial court imposed a firearm enhancement that simply was not legally authorized by the otherwise appropriate charges and jury findings, and we held that this sort of structural error is not subject to the harmless error doctrine. *See Recuenco* III, 163 Wn.2d at 436, 441; *cf. Recuenco* II, 548 U.S. at 220 n.3 ("Because the Supreme Court of Washington [in *Recuenco* I] treated the error as one of [judicial fact finding], we treat it similarly."). The *Recuenco* III decision was based on both state and federal constitutional provisions. *See Recuenco* III, 163 Wn.2d at 436 & n.7, 440. Although the jury in *Recuenco* had "returned a special verdict finding that Recuenco was armed with a deadly weapon," *id.* at 432, we held that "[w]ithout a jury determination that he was armed with a 'firearm,' the trial court lacked authority" to impose a firearm enhancement, *id.* at 440. Further, we noted that the "information did not contain an allegation that a firearm enhancement applied," *id.* at 432, and we held that because the "prosecutor chose to charge the lesser enhancement of 'deadly weapon,'" an error occurred when the defendant "was sentenced for an enhancement that was not charged,"

*id.* at 435, 436; *see also id.* at 434 (noting that the State must "allege in the information the crime which it seeks to establish . . . includ[ing] sentencing enhancements" (footnote omitted)).

## B. RETROACTIVITY

¶10 The new rules announced in *Blakely*, *Recuenco* I, and *Recuenco* III are not retroactive. In 2005, we held that *Blakely* does not apply "retroactively on collateral review to convictions that were final when *Blakely* was announced." *State v. Evans*, 154 Wn.2d 438, 442, 114 P.3d 627 (2005). We acknowledged that *Blakely* announced a "new rule" because the result in that case was not dictated by prior precedent, but we held that *Blakely* did not satisfy the additional requirement for retroactivity on collateral review. *Id.* at 444-48; *see also* RAP 16.4(c)(4). Namely, we found that the new procedural rule announced in *Blakely* neither " 'places certain kinds of primary, private individual conduct beyond the power of the state to proscribe' " nor " 'requires the observance of procedures implicit in the concept of ordered liberty' " and, thus, is not a rule to be applied retroactively. *Id.* at 444 (quoting *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 326, 823 P.2d 492 (1992)); *see also id.* at 447-48. Accordingly, the rule announced in *Blakely* does not apply to convictions that were final prior to that decision.

¶11 The same is true of the rules that were announced in *Recuenco* I and *Recuenco* III: they do not apply retroactively. Our opinions in *Recuenco* I and *Recuenco* III announced new rules. The rule in *Recuenco* I—that imposition of a firearm enhancement as a result of a jury's deadly weapon finding is error—and the clarification of that rule in *Recuenco* III—that such error constitutes structural error not subject to harmless error analysis—were not dictated by precedent. *See, e.g., State v. Meggyesy*, 90 Wn. App. 693, 708-09, 958 P.2d 319 (1998) ("[T]here is nothing in the statutes requiring a specific finding regarding a firearm. . . . [O]nce a finding regarding a deadly weapon is

made, it is up to the sentencing court to determine the appropriate enhancement." (citing *State v. Thorne*, 129 Wn.2d 736, 921 P.2d 514 (1996))); *Gore*, 143 Wn.2d at 311-15; *see also Recuenco* I, 154 Wn.2d at 162 n.2 (explicitly overruling "[c]ases that allowed judges to impose firearm enhancements where juries found only the presence of deadly weapons" (citing cases)).

¶12 The additional rule announced in *Recuenco* III—that a firearm enhancement must be charged with explicit particularity in order to authorize a firearm enhancement at sentencing—also was a new rule. *See Meggyesy*, 90 Wn. App. at 706, 708-09 (State's charge that defendant was armed with a "deadly weapon" was sufficient to authorize firearm enhancement at sentencing); *cf. State v. Theroff*, 95 Wn.2d 385, 387, 392-93, 622 P.2d 1240 (1980) (firearm enhancement held unavailable at sentencing when charges contained no indication of any intent to seek any enhancements); *State v. Frazier*, 81 Wn.2d 628, 634-35, 503 P.2d 1073 (1972) (precluding firearm enhancement at resentencing when absolutely no notice was given in advance and jury made only a "deadly weapon" finding).

¶13 Citing *Frazier*, Rivera argues that Washington law always has required particular findings by a jury in order to impose a firearm enhancement. *See* Rivera Br. at 14-15. *Frazier* is distinguishable, however, because it relied heavily on the fact that absolutely no notice of the enhancement had been given in that case. Further, Rivera's argument ignores that *Gore*, *Meggyesy*, and *Thorne* all were decided after *Frazier*—and prior to 2002.

¶14 The rules announced in *Recuenco* were new, but they do not merit retroactive application. As we held in *Evans*, "[T]he identity of the fact finder for sentencing purposes [is] *not* implicit in the concept of ordered liberty and [does] not implicate the fundamental fairness of the proceedings." 154 Wn.2d at 447. The same is true of the degree of specificity with which firearm enhancements are initially charged—that is, as "deadly weapon" or "firearm" enhancements—

notwithstanding the general importance of providing defendants with "notice . . . and the ability to prepare a defense" as to sentence enhancements. *Recuenco* III, 163 Wn.2d at 435. The distinction between the labels may be important, but not so important as to require retroactive application of *Recuenco* I and *Recuenco* III to all prior convictions. *Cf. Cruze*, 169 Wn.2d at 429-30 (noting that a firearm enhancement actually is a type of deadly weapon enhancement).

¶15 The parties also reference and rely upon *State v. Williams-Walker*, 167 Wn.2d 889, 225 P.3d 913 (2010). In *Williams-Walker*, the jury had found certain defendants guilty of crimes "which require[d] the jury to find that a firearm was used," but this was held insufficient to satisfy the requirement that a jury authorize sentence enhancements *by special verdict. Id.* at 899. Similarly, as to Rivera and Jackson, the juries impliedly found the use of a firearm. Rivera, for example, was charged with murder based on a shooting death, and thus the jury's guilty verdict implied a finding that Rivera used a firearm. Yet the "special verdict" rule of *Williams-Walker*, even if it were retroactive, would not render Rivera's sentence erroneous at the time it was imposed. Rivera was sentenced based on a jury's special verdict, and regardless of *Williams-Walker*, the jury's special verdict finding that Rivera was armed with a "deadly weapon" (as opposed to a firearm in particular) was sufficient to authorize a firearm enhancement under Washington law prior to *Recuenco*. The same analysis applies to Jackson's case. Further, it seems clear that the "special verdict" rule from *Williams-Walker*, although new, *see, e.g.*, *Gore*, 143 Wn.2d at 315, is not retroactive.

¶16 We hold that the new rules announced in *Recuenco* I and *Recuenco* III are not retroactive.

C. Entitlement to Relief

¶17 Because Rivera and Jackson are not entitled to retroactive application of the rules announced in *Blakely*, *Recuenco* I, and/or *Recuenco* III, they are not entitled to

relief. Rivera and Jackson argue that the jury's "deadly weapon" finding did not authorize a firearm enhancement, and Jackson also argues that the charges against him were insufficiently particular to authorize a firearm enhancement. These arguments rely on the retroactivity of *Recuenco* I and *Recuenco* III. Because *Recuenco* I and *Recuenco* III are not retroactive, the petitions are time barred and must be dismissed. *See* RCW 10.73.090, .100; *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 136, 267 P.3d 324 (2011) ("Only where the judgment and sentence was entered by a court without the authority to do so have we held the judgment invalid.").

## III. CONCLUSION

¶18 *Recuenco* I and *Recuenco* III are not retroactive, and thus, Rivera and Jackson are not entitled to any relief on collateral review. The information in each case first alleged that the defendant was armed with a firearm and then sought a deadly weapon enhancement (in Rivera's case, citing specifically to a firearm enhancement statute). Further, the jury in each case rendered a special verdict finding that the defendant was armed with a deadly weapon. Under Washington law prior to *Recuenco*, nothing more was required in order to impose a firearm enhancement. Thus, because *Recuenco* I and *Recuenco* III are not retroactive, the personal restraint petitions of Rivera and Jackson are time barred and without underlying merit. We affirm the Court of Appeals in Rivera's case and deny Jackson's personal restraint petition.

C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ., concur.

¶19 MADSEN, C.J. (concurring) — I agree that the personal restraint petitions should be dismissed in these cases. However, unlike the majority, I would address the petition-

ers' claims that the procedural time bar to filing personal restraint petitions does not bar their petitions.

¶20  First, each relies on RCW 10.73.090(1) to argue that his judgment and sentence is invalid on its face and therefore the one-year time bar does not apply. As I explained in my concurrence in *In re Personal Restraint of Coats*, 173 Wn.2d 123, 144, 267 P.3d 324 (2011) (Madsen, C.J., concurring), I believe that the plain language of RCW 10.73.090(1) and the historical meaning of the words "valid on its face" mean that in order to avoid the one-year bar on collateral attack of a judgment, a petitioner must claim a defect that actually appears on the face of the document. If no such defect appears on the face of the judgment and sentence, then the time bar applies unless an exception in RCW 10.73.100 applies. A court should not consider the special verdict forms returned by juries when the court considers the issue of whether invalidity respecting sentence enhancements appears on the face of the judgment and sentence.

¶21  In each case, there is no invalidity on the face of the judgment and sentence and, accordingly, no exemption from the time bar under RCW 10.73.090(1). In petitioner Ronnie Jackson's case, the sentencing court affirmatively checked a box next to "[a] special verdict/finding for use of a firearm was returned on Counts I, II, and III." State's Resp. to Pet'r's Third Pers. Restraint Pet., App. A (J. & Sentence at 2). The judgment and sentence is otherwise consistent, except in one other finding that says that the jury returned a deadly weapon special verdict with regard to the attempted murder count. The court imposed a firearm sentence enhancement on each count.

¶22  In petitioner Salvador Rivera's case, the judgment and sentence is consistent throughout that a deadly weapon special verdict was returned and otherwise refers to petitioner as having been armed with a deadly weapon. The sentencing court imposed a firearm sentence enhancement.

¶23 I would conclude that neither judgment and sentence shows invalidity on the face of the document. Case law that developed after these petitioners were sentenced does not apply to require that only a deadly weapon sentence enhancement could be imposed if that is what the jury's special verdict provided. Among the cases are *State v. Recuenco*, 154 Wn.2d 156, 110 P.3d 188 (2005) (*Recuenco* I), and *State v. Recuenco*, 163 Wn.2d 428, 180 P.3d 1276 (2008) (*Recuenco* III), which the majority holds do not apply retroactively. Accordingly, that a judgment and sentence shows return of a deadly weapon finding and imposition of a firearm sentence enhancement does not constitute invalidity that appears on the face of the judgment and sentence.

¶24 The petitioners also rely on exceptions in RCW 10.73.100. Each maintains that there has been a material intervening change in the law that applies retroactively, and this exempts his petition from the time bar. RCW 10.73.100(6). Petitioners rely on *Recuenco* I and *Recuenco* III. The claims fail because, as the majority holds and contrary to the arguments, these cases do not apply retroactively.[2] Accordingly, the exception in RCW 10.73.100 does not apply.

¶25 I concur in the majority's result that the personal restraint petitions must be dismissed.

Reconsideration denied September 21, 2012.

---

[2] Because this claim fails, it is unnecessary to address Mr. Jackson's second claim under RCW 10.73.100. The best that could happen is that he has filed a mixed petition that must be dismissed.