[No. 86474-8.   En Banc.]

Argued May 1, 2012.   Decided February 7, 2013.

THE STATE OF WASHINGTON, *Respondent*, v. JAMES JOHN CHAMBERS, JR., *Petitioner*.

574

*Stephen G. Johnson*, for petitioner.

*Mark E. Lindquist*, *Prosecuting Attorney*, and *Stephen D. Trinen*, *Deputy*, for respondent.

¶1 MADSEN, C.J. — James John Chambers Jr. was charged with several crimes arising from incidents which occurred during February, May, and November 1999.[1] Before committing the November crimes, Chambers pleaded guilty to charges resulting from the February and May incidents. Prior to sentencing on these charges, Chambers entered into an agreement that provided that he would plead guilty to the November crimes and stipulate to a 240 month sentence to run consecutively to the sentences for the February and May crimes. Chambers was sentenced for the February and May crimes and pleaded guilty to the November crimes on the same date. He was sentenced for the November crimes at a subsequent hearing.

¶2 Several years later, Chambers filed personal restraint petitions (PRPs), seeking to withdraw his plea to the February charges and arguing that his sentence on the November charges was incorrectly calculated. The trial court granted Chambers' motion to withdraw his February plea but denied his request for resentencing on the November charges. The Court of Appeals consolidated the PRPs and reversed, holding that the pleas were indivisible and declining to consider the validity of the sentence arising from the November crimes. We hold that Chambers entered into a global plea agreement that was indivisible and that he failed to demonstrate that his 240 month sentence resulted in a complete miscarriage of justice.

## FACTS AND PROCEDURAL HISTORY

¶3 In February 1999, the State charged Chambers with four crimes under Pierce County Superior Court No. 99-1--00817-2, including one count of unlawful possession of a controlled substance, one count of unlawful manufacturing of a controlled substance (both with firearm enhance-

---

[1] Because the State filed multiple charges stemming from each incident, we refer only to the date of the crimes, rather than the specific charges, except where the specific charges are relevant.

ments), and two counts of first degree unlawful possession of a firearm (February charges). Chambers negotiated a plea agreement with the State and pleaded guilty on July 7, 1999. The State's sentencing recommendation was listed as "open." Also on that date, Chambers pleaded guilty to the crime of unlawful possession of methamphetamine under cause no. 99-1-02235-3, which he committed in May 1999 (May charge). The State's recommendation was also listed as "open."

¶4 Following his pleas but prior to sentencing, Chambers committed several additional crimes, including fatally injuring a pedestrian while driving a stolen vehicle. On November 22, he was charged with one count of failure to remain at an injury accident, two counts of first degree possession of stolen property, one count of unlawful possession of a firearm, and one count of unlawful manufacture of methamphetamine under no. 99-1-05307-1 (November charges).

¶5 The prosecutor's office offered Chambers a plea agreement following the November charges, which was memorialized in a letter on February 9, 2000. The letter stated that the offer included two parts. First, Chambers must agree that the sentencing for the November charges would run consecutively to the February and May charges. As to the range, the letter noted the standard range of 149-198 months for the February charges and stated that Chambers was free to ask for the low end of the range.

¶6 The second part of the offer required Chambers to plead guilty to the November charges. The letter stated that the statutory maximum for a crime of manufacture or possession with intent to deliver was 10 years. However, the letter then erroneously said that RCW 69.50.408 authorized a doubling of the standard range for a subsequent conviction for these charges. *In re Pers. Restraint of Cruz*, 157 Wn.2d 83, 90, 134 P.3d 1166 (2006) (RCW 69.50.408 authorizes doubling of the statutory maximum, not the standard range). The letter continued, "Your client would

have to agree to 240 months on the manufacturing on the 99-1-05307-1 matter. The other counts on this matter involve lesser amounts of time . . . . This would run consecutive to the [99-1-]02235-3 and [99-1-]00817-2 matters." Clerk's Papers (CP) (Aug. 10, 2010) at 45.

¶7 Finally, the letter noted that if the offer was rejected, the State would amend the November charges to include a felony murder charge and a gun enhancement on the manufacturing charge.

¶8 On March 17, 2000, Chambers pleaded guilty to the November charges, pursuant to the plea agreement. Also that day, the trial court entered judgment and sentence on the February charges and the May charge. The judgment and sentence form stated that the charges would run concurrently to one another but consecutively to the November charges that were yet to be sentenced, following the State's recommendation.

¶9 Judgment and sentence was entered on May 5, 2000 for the November charges. At sentencing, the State described the agreement, including the agreed recommendation of 240 months and that the sentences would run concurrently to one other but consecutively to the February and May charges. In response, the court stated, "[I]t's my understanding that that's the highest standard range sentence available for each count." Pl.'s Ex. 2, at 5. The State confirmed. On imposing the sentence, the court observed:

> Mr. Chambers' life was just totally out of control when this happened, completely, in every way. And because of that, there's really no sentence that's fair other than the high end of the range on each of the counts, as is being suggested. I'm going to impose the agreed-on sentence and the other financial conditions and otherwise that the State's requesting.

*Id.* at 17. The trial court directed the November sentence to run consecutively to the February and May sentences, as recommended by the State.

¶10 In 2008, Chambers filed a PRP, challenging his sentence on the February charges. The Court of Appeals

held that sentences on two of the February charges were incorrect and remanded for resentencing. This court granted discretionary review and remanded the case to the trial court to reconsider the sentences on all four charges. On remand, Chambers moved to withdraw his plea to the February charges. The State argued that the February charges were part of an indivisible plea agreement and that Chambers would need to withdraw both his February and November pleas. The trial court disagreed, concluding that the pleas were divisible; granted Chambers' motion to withdraw the plea on his February charges; and then dismissed the February charges because the State's evidence had been destroyed.

¶11 Chambers also sought relief from the November judgment and sentence, arguing that it was based on an erroneous doubling of the sentencing range. The trial court denied relief. Both parties appealed.

¶12 The Court of Appeals consolidated the two cases and determined that the plea agreement was indivisible, reversing the trial court. *State v. Chambers*, 163 Wn. App. 54, 62, 256 P.3d 1283 (2011). The court did not decide the validity of the sentence for the November crimes, reasoning that the issue was moot in light of its holding on indivisibility of the agreement. *Id.* at 61. The Court of Appeals remanded, noting that Chambers may seek to withdraw his pleas to the February and November charges. *Id.* at 62.

## ANALYSIS

### I. Divisibility of the plea agreement

¶13 We first consider whether Chambers' pleas were part of an indivisible plea agreement. "A plea agreement is essentially a contract made between a defendant and the State." *State v. Turley*, 149 Wn.2d 395, 400, 69 P.3d 338 (2003); *State v. Hardesty*, 129 Wn.2d 303, 318, 915 P.2d 1080 (1996). Whether a contract is divisible or indivisible is dependent upon the intent of the parties. *Turley*, 149 Wn.2d

at 400. We look only to objective manifestations of intent, not unexpressed subjective intent. *Id.*

¶14 In *Turley*, we were asked to decide whether a defendant can withdraw his guilty plea to one count addressed in a plea agreement, but not to others. *Id.* at 398. We held that the agreement was indivisible based on the record, which showed the defendant had pleaded guilty to multiple charges in a single proceeding and that the pleas were described in the same agreement. *Id.* at 398, 402. Accordingly, we held the defendant could not withdraw his plea to only one of the charges.

¶15 Relying on *Turley*, Chambers contends his plea agreement is divisible because the February and November charges were eight months apart, he was sentenced in separate proceedings, and the sentences were entered in different documents. Chambers appears to argue that the facts we identified in *Turley* established a new "factors" test. That is incorrect. *Turley* merely identifies the facts in that case, which revealed an objective intent to address all of the charges in a comprehensive plea agreement, i.e., "a 'package deal.' " *Id.* at 400. We continue to look to the objective manifestations of the parties to determine whether a plea is indivisible.

¶16 Here, the record shows the parties' intent to create a global, indivisible plea agreement. First, the letter memorializing the agreement referenced all of the cause numbers and sentences for the February, May, and November charges. Second, the letter stated that the sentences for the February and May charges would run concurrently to one other but consecutively to the November charges. This demonstrates the interconnectedness of the charges. In addition, the letter specifically authorized Chambers to seek the low end of the standard range on count one of the February charges, evidencing that the range on the February charges was a consideration in the agreement and a concession by the State.

¶17 The intent to establish a global plea agreement is further shown by the parties' agreement at sentencing. When sentencing on the February charges, the court specifically asked whether the State's recommendation on one of the February charges was made in light of the plea agreement:

> THE COURT: Was part of the rationale for the State's recommendation on this case [99-1-00817-2] the fact that [Chambers] was willing to plead guilty on those other matters?
>
> [STATE]: That is correct, Your Honor. He's coming into this, he's pleading guilty to the other matters. Though he is getting a certain break on those, Murder 2 for him would be low end 396 with one-sixth off. So he's getting a consideration there as well. But that is why the State is recommending [the] low end here is because he did step forward and plead as charged on [99-1-05]307-1. And there are two consecutive 36 months flat time firearms sentencing enhancements on these two matters.
>
> . . . .
>
> [DEFENDANT'S COUNSEL]: Your Honor, I'd just like to join in the State's recommendation and ask that the Court go along with the recommendation of 149 months. I know that as hard as we've tried on the sentencing enhancements, I know that your hands are tied in that regard. And there's nothing further.
>
> . . . .
>
> THE COURT: . . . On the one hand, I suppose you can lay most of the blame off on the drugs. On the other, with your – the extent of your criminal involvement it would be justified to easily go to the high end of the range in all these charges.
>
> I think, though, given the fact that this has all been resolved through plea, that both the State and the defense have invested some time and thought into this to try and reach a reasonable resolution for everybody, that the joint recommendation is the appropriate one.

Verbatim Transcript of Proceedings (Mar. 17, 2000) at 16-17, 21-22.

¶18 As evidenced in the trial court record, the State specifically noted its low recommendation was based on

Chambers' plea of guilty to the November charges. This supports the language of the letter memorializing the plea, where the State agreed that Chambers could seek the low end of the standard range on count one of the information charging the February crimes. Additionally, Chambers' counsel agreed with the State's recommendation. The record suggests that had Chambers not entered into the plea agreement, the State would have sought a higher sentence for the February charges. We conclude the objective intent of the parties was to enter an indivisible, global plea agreement encompassing the February, May, and November charges.

II. Legality of the sentence

¶19 The Court of Appeals declined to review the validity of the sentence imposed for the November charges in light of its holding that the plea agreements were indivisible. Although a plea agreement may exist, a defendant is not precluded from review if there is a fundamental defect justifying collateral relief. *See In re Pers. Restraint of West*, 154 Wn.2d 204, 214-15, 110 P.3d 1122 (2005); *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 873-74, 50 P.3d 618 (2002) (determining that a plea agreement does not prevent a defendant from collaterally attacking a sentence that is in excess of statutory authority). Accordingly, we must address the validity of the November sentence in light of Chambers' contention that the 240 month sentence he agreed to was "illegal and . . . erroneous." Pet. for Review at 6.

¶20 Initially, we must determine if Chambers' PRP is time barred under RCW 10.73.090(1). A collateral attack on a judgment and sentence may not be made more than one year after the judgment becomes final if the judgment and sentence was facially valid and entered with competent jurisdiction, subject to the exceptions in RCW 10.73.100. RCW 10.73.090; *In re Pers. Restraint of Stenson*, 174 Wn.2d 474, 485, 276 P.3d 286 (2012). Generally, a judgment and sentence is facially invalid "if it exceeds the duration

allowed by statute and the alleged defect is evident on the face of the document without further elaboration." *West*, 154 Wn.2d at 211. For example, we have held a judgment and sentence is facially invalid when an offender score was incorrectly calculated due to the improper inclusion of juvenile crimes. *Goodwin*, 146 Wn.2d at 866-67.

¶21 Chambers failed to file his personal restraint petition within one year of the judgment and sentence for the November charges. However, he received an exceptional sentence of 240 months, which falls outside the standard range of 149-198 months. There were no written findings of fact and conclusions of law setting forth the reasons for an exceptional sentence as required under former RCW 9.94A.120(3) (2000). Therefore, his sentence is invalid on its face and the one year time bar does not apply.

¶22 Next, we must determine whether Chambers is entitled to collateral relief. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007). "Imposition of a sentence which is not authorized by the SRA [(Sentencing Reform Act of 1981, ch. 9.94A RCW,)] is a fundamental defect which may justify collateral relief." *In re Pers. Restraint of Breedlove*, 138 Wn.2d 298, 304, 979 P.2d 417 (1999); *In re Pers. Restraint of Moore*, 116 Wn.2d 30, 33, 803 P.2d 300 (1991). The burden is on a petitioner to show actual prejudice for claimed constitutional errors, and to show a fundamental defect resulting in a complete miscarriage of justice for nonconstitutional errors by a preponderance of the evidence. *Elmore*, 162 Wn.2d at 251; *Breedlove*, 138 Wn.2d at 304; *In re Personal Restraint of Cook*, 114 Wn.2d 802, 811-12, 792 P.2d 506 (1990). We have held that a sentence based on a miscalculated offender score that resulted in a sentence outside the standard range is a nonconstitutional error requiring the petitioner to meet the complete miscarriage of justice standard. *Goodwin*, 146 Wn.2d at 876.

¶23 Chambers contends that due to an erroneous application of the doubling rule, his sentence is outside the

standard range. As in *Goodwin*, the burden is on Chambers to demonstrate that this error resulted in a complete miscarriage of justice.

¶24 Chambers argues that the 240 month sentence he received was an imposition of an exceptional sentence without substantial and compelling reasons, in violation of the SRA. At the time of Chambers' sentencing, former RCW 9.94A.120(2) authorized a court to impose an exceptional sentence when there were "substantial and compelling reasons justifying an exceptional sentence."[2] Former RCW 9.94A.390 (2000) provided several "illustrative factors" that the court could consider "in the exercise of its discretion to impose an exceptional sentence," including the " 'free crime' " exception. *State v. Mutch*, 171 Wn.2d 646, 656, 254 P.3d 803 (2011). This exception allowed a judge to impose an exceptional sentence in cases where a defendant's multiple offenses would "result[ ] in a presumptive sentence that is clearly too lenient." Former RCW 9.94A-.390(2)(i). An exceptional sentence could also be imposed when a defendant stipulated to it in a plea agreement. *Breedlove*, 138 Wn.2d at 309.

¶25 The illustrative factors were codified following the United States Supreme Court ruling in *Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), where the Court held that a jury must determine any aggravating factor used to impose a sentence beyond the standard range, other than a prior conviction. LAWS OF 2005, ch. 68, § 1. The language of the free crime exception changed and the "clearly too lenient" language was removed. RCW 9.94A.535(2)(c) now explicitly authorizes a trial court to impose aggravated exceptional sentence without a finding of fact by a jury when "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." Even in light of *Blakely*, no factual

---

[2] Former RCW 9.94A.120 has since been recodified as RCW 9.94A.505. This language is now codified in RCW 9.94A.535.

inquiry is necessary for a finding under this aggravator because only criminal history and a calculation of the offender score are relied upon. *State v. Alvarado*, 164 Wn.2d 556, 567, 192 P.3d 345 (2008) (determining that this provision acted as an "automatic aggravator" without any additional findings of fact, which were necessary when the "clearly too lenient" language was in place).

¶26 Similarly, RCW 9.94A.535(2)(a) authorizes an exceptional sentence without a jury finding following *Blakely* when

> [t]he defendant and the state both stipulate that justice is best served by the imposition of an exceptional sentence outside the standard range, and the court finds the exceptional sentence to be consistent with and in furtherance of the interests of justice and the purposes of the sentencing reform act.

A defendant's stipulation and the free crime exception are substantial and compelling reasons for imposing an exceptional sentence. *Breedlove*, 138 Wn.2d at 300; *Mutch*, 171 Wn.2d at 661.

¶27 Here, the judge was authorized to impose an exceptional sentence, both because Chambers had multiple offenses that would go unpunished and because Chambers stipulated to the sentence in his agreement. Supporting an exceptional sentence based on the free crime exception, Chambers' high offender score of 17 on count V would have resulted in his other counts going unpunished.[3] The sentence of 240 months he received on count V did not exceed the statutory maximum, only the standard range. Either reason for the sentence is substantial and compelling, and so Chambers' argument that the sentence was illegal fails.

¶28 Chambers cannot show a complete miscarriage of justice. Indeed, he received the precise sentence he stipulated to in the plea agreement. There is a strong public

---

[3] Count V had an offender score of 17. Any score above 9 results in a standard range equal to that received under a score of 9. Removing counts I-IV would not reduce Chambers score below 9.

interest in enforcing the terms of voluntarily and intelligently made plea agreements. *Breedlove*, 138 Wn.2d at 309. "Between the parties, [plea agreements] are regarded and interpreted as contracts and both parties are bound by the terms of a valid plea agreement." *Id.* "There is no miscarriage of justice where the sentence imposed is the precise sentence requested by the defendant." *Id.* at 311. Chambers agreed to a 240 month sentence, not to a sentence in the standard range. This is evidenced by the language of the letter that states, "Your client would have to agree to 240 months on the manufacturing on the 99-1-05307-1 matter." CP (Aug. 10, 2010) at 45. The judge respected the plea agreement and imposed the terms as recommended. Chambers received the sentence he agreed to.

¶29 The failure of the trial judge to check the exceptional sentence box and enter a finding of fact does not require resentencing when the sentence was requested by the defendant. *Breedlove*, 138 Wn.2d at 311. In *Breedlove*, the parties agreed that an exceptional sentence was justified in light of the crime and possibility a potential murder conviction would result as a " 'most serious offense' " classification under the " 'three strikes' " law. *Id.* at 310. Although the judge accepted the parties' stipulation to an exceptional sentence, he failed to enter findings of fact and conclusions of law justifying the sentence on the grounds described in the stipulation. *Id.* We stated that the parties' stipulation did not relieve the judge's duty under former RCW 9.94A.120(3) to enter these findings; however,

> [t]he failure to enter findings does not justify vacation of the sentence in a personal restraint proceeding unless it is a fundamental defect which results in a complete miscarriage of justice. *See In re Personal Restraint of Cook*, 114 Wn.2d 802, 812, 792 P.2d 506 (1990). There is no miscarriage of justice where the sentence imposed is the precise sentence requested by the defendant.

*Breedlove*, 138 Wn.2d at 311. While the sentencing judge here should have checked the appropriate box and entered

his reasons for the sentence, this failure does not justify vacation of the sentence.

¶30 Chambers also argues that the judge mistakenly believed the sentence was within the standard range, and therefore resentencing is necessary to allow the judge to consider the correct standard range. Chambers relies on *Goodwin*, 146 Wn.2d 861, and *In re Personal Restraint of Johnson*, 131 Wn.2d 558, 933 P.2d 1019 (1997), to support his claim.

¶31 In *Goodwin*, the defendant argued that his offender score was miscalculated because it included " 'washed out' " offenses. *Goodwin*, 146 Wn.2d at 864-65. We agreed that his score was miscalculated and, as a matter of law, the sentence imposed was in excess of what was statutorily permitted. *Id.* at 875-76. In contrast, Chambers' sentence did not exceed that which was permitted by law.

¶32 In *Johnson*, the defendant's incorrectly calculated offender score resulted in a sentence that was lawful and within the standard range. *Johnson*, 131 Wn.2d at 561-62. However, the trial court stated its intent to impose a sentence at the low end of the standard range, imposing a sentence similar to Johnson's codefendants. *Id.* at 561. The court believed the standard range to be 261-347 months, but it was actually 250-333 months. *Id.* at 561-62. Johnson argued that in light of the court's intention to give him a sentence at the low end, he was prejudiced by the incorrect calculation. *Id.* We agreed, reasoning that although the sentence Johnson received was legally authorized because it was within the standard range, the judge intended the sentence to be in line with Johnson's codefendants. *Id.* at 569.

¶33 Unlike *Johnson*, Chambers bargained for his sentence and his sentence was not the product of a miscalculated offender score. Neither *Goodwin* nor *Johnson* requires resentencing in this case.

¶34 Our decision in *State v. Parker*, 132 Wn.2d 182, 937 P.2d 575 (1997) is closer to the mark. In *Parker*, the trial

court imposed an exceptional sentence based on an erroneously calculated standard range. *Id.* at 186-87. We acknowledged that while remand is the appropriate remedy when the court incorrectly calculates the standard range, remand is unnecessary where "the record clearly indicates the sentencing court would have imposed the same sentence anyway." *Id.* at 189.

¶35 The record here indicates the sentencing judge would have imposed the same sentence had the correct range been presented. The judge acknowledged that a high sentence was appropriate when he said:

> Mr. Chambers' life was just totally out of control when this happened, completely, in every way. And because of that, there's really no sentence that's fair other than the high end of the range on each of the counts, as is being suggested.

Pl.'s Ex. 2, at 17. The judge intended to, and in fact did, follow the parties' agreement. In essence, Chambers got the benefit of the bargain he made.

## CONCLUSION

¶36 We hold that the agreement Chambers entered into was indivisible based on the parties' objective manifestation of intent. Further, we hold that Chambers fails to establish that his sentence for the November crimes resulted in a complete miscarriage of justice because he received the exact sentence that he stipulated to and the judge had the legal authority to impose it. Accordingly, we affirm the Court of Appeals' holding as to the indivisibility of the plea agreement and dismiss Chambers' PRP challenging his sentence for the November charges.

OWENS, FAIRHURST, J.M. JOHNSON, and GONZÁLEZ, JJ., and CHAMBERS, J. PRO TEM., concur.

¶37 WIGGINS, J. (dissenting) — The majority's holding speculates about what the trial court could have done if the

court and the parties had properly understood that James Chambers' plea bargain contemplated an exceptional sentence under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, instead of focusing on what the trial court actually did, which was to fail to enter the required factual findings to impose an exceptional sentence. Rather than guess what sentence the trial judge might have imposed had he followed the SRA, I would grant Chambers' personal restraint petition (PRP) and remand this matter to the trial court for resentencing. I dissent.

## DISCUSSION

¶38 As a threshold matter, I agree with the majority that the objective intentions of the parties indicate that Chambers entered into an indivisible plea agreement that encompassed crimes committed in February, May, and November 1999. *See* majority at 580-83. I also agree with the majority that because "[t]here were no written findings of fact and conclusions of law setting forth the reasons for an exceptional sentence as required under former RCW 9.94A-.120(3) (2000)," majority at 584, Chambers' judgment and sentence is invalid on its face and thus overcomes the one-year time bar of RCW 10.73.090(1).

¶39 I part ways with the majority when it holds that Chambers cannot demonstrate that his sentence resulted in a complete miscarriage of justice because the trial court could have imposed an exceptional sentence if it had entered the findings required by the SRA. The majority reaches this conclusion "both because Chambers had multiple offenses that would go unpunished and because Chambers stipulated to the sentence in his [plea] agreement." Majority at 586. I cannot join in these post hoc could-haves or would-haves to affirm the imposition of a sentence that was not authorized by the law and resulted in at least 42 additional months of incarceration. Instead of engaging in such speculation, the trial court should have

the opportunity to determine for itself—this time following the letter of the SRA—whether to impose an exceptional sentence on Chambers. We should remand this matter for resentencing.

I. The trial court plainly failed to follow the requirements of the SRA

¶40 The version of the SRA under which Chambers was sentenced stated that "[t]he court may impose a sentence outside the standard sentence range for that offense if it finds, considering the purpose of the chapter, that there are substantial and compelling reasons justifying an exceptional sentence." Former RCW 9.94A.120(2) (2000), *recodified as* RCW 9.94A.505 (LAWS OF 2001, ch. 10, § 6); majority at 585. Former RCW 9.94A.120(3) requires a court imposing a sentence outside the standard range to "set forth the reasons for its decision in written findings of fact and conclusions of law."

¶41 In Chambers' case, the sentencing judge imposed a sentence outside the standard sentence range for count V of his November crimes (unlawful manufacture of a controlled substance) by doubling the standard range under RCW 69.50.408(1), a provision of the Uniform Controlled Substances Act, chapter 69.50 RCW, that allows any offender "convicted of a second or subsequent offense" to be "imprisoned for a term up to twice the term otherwise authorized . . . ."[4] Contrary to the plain requirements of the SRA, however, the sentencing judge entered no findings of fact or conclusions of law demonstrating substantial and compelling reasons for a sentence outside the standard range. Indeed, the judge believed he was imposing a standard

---

[4] The State doubled the standard range of 149 to 198 months to 298 to 396 months and then capped the range at the doubled statutory maximum of 240 months to arrive at Chambers' 240-month sentence. As the majority acknowledges, this was erroneous because RCW 69.50.408 permits the doubling of the statutory maximum for an offense; it does not authorize doubling the standard range. Majority at 578-79 (citing *In re Pers. Restraint of Cruz*, 157 Wn.2d 83, 90, 134 P.3d 1166 (2006)).

range sentence. *See* Verbatim Report of Proceedings (VRP) (May 5, 2000) at 5 (the trial court states that "it's my understanding that that's the highest *standard range* available" (emphasis added)). Because the trial court did not enter the required findings to impose an exceptional sentence, the imposition of an exceptional 240-month sentence for drug manufacturing was unlawful and in excess of its authority under the SRA.

## II.   Chambers' unauthorized exceptional sentence resulted in a complete miscarriage of justice

¶42  The majority admits that the trial court exceeded its authority when it determined that Chambers' judgment and sentence is facially invalid. Majority at 584. Yet the majority concludes that the resulting 240-month sentence does not meet the complete miscarriage of justice standard because the "judge was authorized to impose an exceptional sentence" under the "free crime" exception or because of Chambers' stipulation to a 240-month sentence in the plea agreement. Majority at 586. The majority confuses what a judge may be authorized to do and what a judge actually does.

¶43  Had the trial judge made the required findings that Chambers' "presumptive sentence" was "clearly too lenient," former RCW 9.94A.390(2)(i) (2000), *recodified as* RCW 9.94A-.535 (LAWS OF 2001, ch. 10, § 6), he may have determined that a 240-month exceptional sentence was appropriate because Chambers' high offender score resulted in some of his crimes going unpunished. But, as already discussed, the judge did not make any findings that authorized an exceptional sentence of any kind, let alone one that demonstrated that Chambers' standard range sentence of 149 to 198 months was too lenient. Thus, the majority's reliance on the "free crime" exception erroneously equates fiction with fact.[5]

---

[5] The majority's reliance on and discussion of more recent amendments to the SRA that were prompted by *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), further confuse its discussion of the "free crime"

¶44 The majority also unconvincingly relies on *In re Personal Restraint of Breedlove*, 138 Wn.2d 298, 979 P.2d 417 (1999), to support its holding that Chambers' stipulation to a 240-month sentence authorized the court to impose an exceptional sentence. Majority at 587-88. In *Breedlove*, we held that Breedlove "knowingly, intelligently and voluntarily agree[d] to the exceptional sentence." 138 Wn.2d at 311. Therefore, we indicated that the parties' specific agreement to an exceptional sentence was a substantial and compelling reason for a sentencing judge to depart from the standard sentencing range. *Id.* at 309-10. Unlike Breedlove, Chambers did not specifically agree to an exceptional sentence: Chambers, the State, and the sentencing judge all believed that Chambers' sentence fell within the standard range. In Chambers' case, the parties thus did not "agree that an exceptional sentence [was] justified." *Id.* at 309. Accordingly, *Breedlove* does not excuse the trial court's noncompliance with the SRA when it imposed a sentence in excess of its authority and failed to recognize that it was doing so.

¶45 The majority also reasons that the unlawful sentence imposed resulted in no prejudice to Chambers because Chambers "received the precise sentence he stipulated to in the plea agreement." Majority at 586. The majority notes that Chambers avoided a felony second degree murder charge and a firearm enhancement on count V by pleading guilty. *Id.* at 579. Our case law, however, does not allow criminal defendants to stipulate to punishment beyond what the legislature has authorized in the SRA. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 871, 50 P.3d

exception. *See* majority at 585-86. We must determine the validity of Chambers' sentence based on the provisions of the SRA in effect when Chambers committed the offenses. RCW 9.94A.345; *see also In re Pers. Restraint of LaChapelle*, 153 Wn.2d 1, 12, 100 P.3d 805 (2004). Furthermore, the majority's consideration of issues "in light of *Blakely*," majority at 585, ignores that we have stated that *Blakely* "does not apply 'retroactively on collateral review to convictions that were final when *Blakely* was announced.' " *In re Pers. Restraint of Jackson*, 175 Wn.2d 155, 161, 283 P.3d 1089 (2012) (quoting *State v. Evans*, 154 Wn.2d 438, 442, 114 P.3d 627 (2005)).

618 (2002) (" '[T]he actual sentence imposed pursuant to a plea bargain must be statutorily authorized; a defendant cannot agree to be punished more than the Legislature has allowed for.' " (quoting *In re Pers. Restraint of Moore*, 116 Wn.2d 30, 38, 803 P.2d 300 (1991))); *In re Pers. Restraint of Gardner*, 94 Wn.2d 504, 507, 617 P.2d 1001 (1980) ("[A] plea bargaining agreement cannot exceed the statutory authority given to the courts."); *In re Pers. Restraint of Carle*, 93 Wn.2d 31, 33-34, 604 P.2d 1293 (1980) (holding that the trial court that imposed an erroneous sentence "has both the power and the duty to correct it"). We have also indicated that a party's plea agreement cannot alter the court's sentencing authority. *State v. Barber*, 170 Wn.2d 854, 870-71, 248 P.3d 494 (2011). Chambers' agreement to a 240-month exceptional sentence did not, as the majority holds, relieve the trial court of compliance with the SRA. Chambers' agreement to an unlawful sentence does not negate his showing of prejudice due to receiving an unlawful sentence.

¶46 In short, I cannot agree with the majority that the violation of the SRA in this case did not result in prejudice because an exceptional sentence could have been imposed as a result of either the "free crime" exception or Chambers' stipulation to a 240-month sentence. Without the entry of specific findings of fact and conclusions of law that justified an exceptional sentence, the only lawful sentence the trial court could have imposed was a standard-range sentence between 149 and 198 months. Therefore, Chambers' 240-month sentence overshot what the judge could have lawfully imposed by 42 months. It is hard to imagine how exceeding the authorized sentence by some three and a half years does not result in a "complete miscarriage of justice." Chambers demonstrates the necessary prejudice and is entitled to receive a lawful sentence under the SRA.

### III. Chambers is entitled to remand for the trial court to reconsider the sentence it imposed

¶47 Our cases require remand for corrected sentencing where a legally erroneous sentence has been imposed. In *In re Personal Restraint of Tobin*, we determined that the sentencing court imposed a sentence "beyond that authorized by law." 165 Wn.2d 172, 175, 196 P.3d 670 (2008). We stated that in such circumstances, "the proper remedy is remand for correction of the error." *Id.* at 176.

¶48 In *In re Personal Restraint of West*, the defendant pleaded guilty and agreed to a sentence that prohibited the Department of Corrections (DOC) from giving her early release credit. 154 Wn.2d 204, 215, 110 P.3d 1122 (2005). We held that the trial court exceeded its authority because only the DOC had authority to grant early release credit. *Id.* at 212-13. This error entitled the petitioner to reversal of the " 'erroneous portion of the sentence imposed.' " *Id.* at 215 (quoting *State v. Eilts*, 94 Wn.2d 489, 496, 617 P.2d 993 (1980)).

¶49 We have stated that "a defendant cannot agree to punishment in excess of that which the Legislature has established." *Goodwin*, 146 Wn.2d at 873-74. In *Goodwin*, the sentencing court imposed a sentence based on a miscalculated score to which the defendant agreed. *Id.* at 864-65, 867. Because the sentencing court exceeded its authority in doing so, we required relief in the form of resentencing within statutory authority. *Id.* at 877.[6] The trial court in this case, like the court in *Goodwin*, exceeded its authority when it imposed an exceptional sentence that was not

---

[6] The majority simply states that unlike *Goodwin*, Chambers' sentence was not in excess of statutory authority. As already discussed and as the majority implicitly acknowledges when it holds that Chambers' judgment and sentence was facially invalid, the sentencing court exceeded its authority when it imposed a sentence outside the standard range without entering written findings of fact and conclusions of law that provided reasons for imposing an exceptional sentence. *See* majority at 584.

supported by factual findings. *Goodwin* consequently requires remand for a sentence that complies with the SRA.

¶50 In *Breedlove*, we stated that "[t]he fact that a stipulation may be a substantial and compelling reason justifying an exceptional sentence does not relieve the sentencing court of its duty to enter findings of fact and conclusions of law which explain the reasons for the sentence." 138 Wn.2d at 310. For this reason, we remanded *Breedlove* to the trial court "for the entry of findings of fact and conclusions of law supporting the exceptional sentence." *Id.* at 313. Thus, even if Chambers' stipulation were a substantial and compelling reason to impose an exceptional sentence, *Breedlove* compels remand for the trial court to make findings of fact and conclusions of law on this issue.

¶51 The majority contends that *State v. Parker*, 132 Wn.2d 182, 937 P.2d 575 (1997), should control our decision here. Majority at 588. In *Parker*, we stated that "[w]hen the sentencing court incorrectly calculates the standard range before imposing an exceptional sentence, remand is the remedy unless the record clearly indicates the sentencing court would have imposed the same sentence anyway." 132 Wn.2d at 189. The majority excerpts the sentencing judge's comments that " 'there's really no sentence that's fair other than the high end of the range on each of the counts,' " majority at 589 (quoting VRP (May 5, 2000) at 17), to conclude that the "record here indicates the sentencing judge would have imposed the same sentence had the correct range been presented," *id.* To the contrary, we cannot know whether the judge would have imposed a sentence at the high end of the standard range or would have imposed an exceptional sentence given that the judge did not contemplate this distinction. Guessing what the judge would have done in this case "would uphold a sentence which the sentencing judge might not have imposed given correct information." *Parker*, 132 Wn.2d at 190.

¶52 These cases all demonstrate that where the trial court has imposed a sentence not authorized by the SRA,

the appropriate remedy is remand to the trial court to impose a sentence that is authorized by the SRA. We should follow this precedent and remand Chambers' 240-month exceptional sentence to the trial court so that it may impose a lawful sentence. On remand, the trial court may consider any information within the parties' plea agreement. *See* former RCW 9.94A.370 (2000), *recodified as* RCW 9.94A-.530 (LAWS OF 2001, ch. 10, § 6). This information may lead the trial court to engage in the fact-finding required to impose an exceptional sentence, or it may not. The sentence in this case should be determined by the trial court charged with imposing SRA-compliant sentences, not by the guesswork of this court.

## CONCLUSION

¶53 The majority's holding assumes that the trial court would impose the same sentence on Chambers regardless of whether it complies with the SRA. Instead of speculating what the trial court would have done or could have done had it followed the SRA's requirements, we should grant Chambers' PRP and remand this sentencing matter for the trial court to impose a sentence that is lawful under the pertinent provisions of the SRA.

¶54 I dissent.

C. JOHNSON and STEPHENS, JJ., concur with WIGGINS, J.