[No. 26694-2-I.   Division One.   May 26, 1992.]

*In the Matter of the Detention of* COLLEEN KIRBY.

COLLEEN KIRBY, *Appellant,* v. THE STATE
OF WASHINGTON, *Respondent.*

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Katharine B. Wilcox, Senior Deputy,* for respondent.

GROSSE, C.J. — Colleen Kirby appeals the trial court's continuance of the hearing for determination of probable cause to detain her for involuntary treatment of mental illness. She also appeals the trial court's imposition of 14 days of involuntary inpatient treatment.

On March 20, 1990, Kirby presented herself for voluntary treatment at Harborview Medical Center Emergency Room. She was evaluated by a social worker on duty who found her to be paranoid and delusional. Kirby stated that she might have to kill the 14-year-old girl who lived with her, and that she had taken an overdose because she couldn't face this. She also spoke about someone wanting to kill her, indicated that she had not been sleeping well, and vacillated back and forth on whether or not she should take medications or remain in the hospital. The social worker concluded that Kirby was suffering from a mental disorder, was a threat to herself and possibly others, and needed inpatient psychiatric treatment. Kirby was later evaluated by a King County mental health professional who concluded that Kirby was grossly disabled and a danger to herself and others.

On March 21, 1990, Kirby was served a "Notice and Statement of Rights & Notification of Attorney" (advising her of her rights, including the right to remain silent) and a "Notice of Emergency Detention" (custody authorization). The "Custody Authorization" form indicates Kirby was detained at 2 a.m., March 21, 1990.

On Friday, March 23, 1990, a petition for 14-day involuntary treatment was filed. It was signed by Joyce Shaffer, Ph.D., who had examined Kirby and concluded that Kirby

presented a likelihood of serious harm to herself and others. Dr. Shaffer stated that she would testify at the hearing. Sunida Bintason, M.D., concurred in Shaffer's judgment and signed the petition as well. A hearing to determine probable cause to commit Kirby was set for 9 a.m., March 23, 1990.

At approximately 7 p.m. on March 23, the hearing commenced before King County Superior Court Judge William L. Downing. At that time the State indicated that its professional witness was unavailable and moved to continue the hearing until Monday, March 26. Kirby's counsel moved to dismiss the case, arguing that court congestion and the unavailability of a witness do not constitute good cause for a continuance. The court granted the State's motion.

The order of continuance stated in pertinent part:

> [A] Continuance is required in the due administration of Justice as the expert witness was present testifying in an earlier case which ended at 6:19 p.m. (and had a 4:20 p.m. expiration time); the doctor has 7 patients expecting her at 6:30 p.m.; three cases remain to be heard; a different judge will be here Monday 3/26/90.

At the March 26 hearing held before another judge, defense counsel renewed the objection to the continuance and renewed the motion to dismiss based on a violation of RCW 71.05.240's 72-hour rule.[1] Counsel requested reconsideration of the motion to dismiss arguing that the court had erred in denying the motion to dismiss on March 23.

The court denied the motion to dismiss stating that it would be improper to review the prior hearing. After considering testimony from the emergency room social worker and a clinical psychologist who had evaluated Kirby, as well as from Kirby, the trial court found Kirby "as a result of a mental disorder, presents a likelihood of serious harm to herself" and that "[t]reatment in a less restrictive alternative setting than detention is (not) [sic] in the best interest of the Respondent and others." An order for intensive treat-

---

[1] That rule states that, subject to specified exceptions, a probable cause hearing must be held within 72 hours of the patient's initial detention.

ment not to exceed 14 days from Friday, March 23, 1990, was entered to be served at Western State Hospital, subject to the placement recommendation of Kirby's treating psychiatrist. Kirby had previously visited this facility and strenuously objected to being sent there. Kirby argues that the trial court erred in granting the continuance, and that the record before the court contained insufficient evidence to support the imposition of involuntary treatment under the applicable statute.

■ ■ This case is technically moot because the order which placed Kirby in involuntary detention for 14 days has expired. We may decide a moot case, however, if it involves a matter of continuing and substantial public interest. In considering whether a sufficient public interest is involved, we consider the following: (1) the public or private nature of the question presented; (2) the desirability of an authoritative determination in providing future guidance to public officers; and (3) the likelihood the question will recur. *In re Cross*, 99 Wn.2d 373, 377, 662 P.2d 828 (1983). The Washington Supreme Court has stated that clarifying the statutory scheme governing civil commitment is a matter of continuing and substantial public interest. *In re Cross, supra, cited in Dunner v. McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984).

■ ■ Kirby maintains that court congestion and the unavailability of a state witness are improper grounds for granting a continuance pursuant to MPR 1.2(b)(2). MPR 1.2 provides:

> In any judicial proceeding for involuntary commitment or detention held pursuant to RCW 71.05 the court may continue or postpone such proceeding for a reasonable time, subject to RCW 71.05.210 and RCW 71.05.240,[2] on the following grounds:
> . . . .

---

[2]RCW 71.05.210 by its terms applies to "person[s] involuntarily admitted to an evaluation and treatment facility". It provides in pertinent part:
> A person who has been detained for seventy-two hours shall no later than the end of such period be released, unless referred for further care on a voluntary basis, or detained pursuant to court order for further treatment as provided in this chapter.

(b) On motion of the prosecuting attorney . . . if:

. . . .

(2) Required in the proper administration of justice and the respondent will not be substantially prejudiced in the presentation of respondent's case.

The Washington Supreme Court has set forth the standard of review in such cases:

> Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.
> Whether this discretion is based on untenable grounds, or is manifestly unreasonable, or is arbitrarily exercised, depends upon the comparative and compelling public or private interests of those affected by the order or decision and the comparative weight of the reasons for and against the decision one way or the other.

*In re Schuoler*, 106 Wn.2d 500, 512, 723 P.2d 1103 (1986) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). The question is thus whether the reasons cited by the trial court are sufficiently tenable to constitute good cause under an abuse of discretion standard.

The legislative history of RCW 71.05.240 provides no guidance concerning what the Legislature intended by the term "good cause". Washington case law likewise provides no assistance in construing "good cause" under RCW 71.05. However, in the criminal context, the Washington Supreme Court has held that docket congestion does not constitute

---

RCW 71.05.240 states in pertinent part:
> The hearing [to determine probable cause] may also be continued subject to the conditions set forth in RCW 71.05.210 or subject to the petitioner's showing of good cause for a period not to exceed twenty-four hours.

Among the conditions set forth in RCW 71.05.210 are the following:
> Such person shall be detained up to seventy-two hours, if, in the opinion of the professional person in charge of the facility, or his or her professional designee, the person presents a likelihood of serious harm to himself or herself or others, or is gravely disabled. A person who has been detained for seventy-two hours shall no later than the end of such period be released, unless referred for further care on a voluntary basis, or detained pursuant to court order for further treatment as provided in this chapter.

good cause for delaying a criminal case within the meaning of the speedy trial rule under CrR 3.3. Underlying the decision in that case was a concern that if docket congestion justified extended trial settings, the State would have no incentive to allocate the necessary resources to remedy the problem. *State v. Mack*, 89 Wn.2d 788, 576 P.2d 44 (1978). *See also State v. Kokot*, 42 Wn. App. 733, 713 P.2d 1121, *review denied*, 105 Wn.2d 1023 (1986).

■ Where the circumstances attending the request are anomalous rather than typical of the operation of the administration of justice, granting a continuance is proper. Thus in *State v. Brown*, 40 Wn. App. 91, 94-95, 697 P.2d 583, *review denied*, 103 Wn.2d 1041 (1985), the Court of Appeals held that a counsel's unavailability for trial can be an unforeseen and unavoidable circumstance beyond the court's control justifying the grant of a continuance. *See also State v. Palmer*, 38 Wn. App. 160, 162, 684 P.2d 787 (1984) (trial deputy's scheduling difficulties are a proper basis for an extension); *State v. Eaves*, 39 Wn. App. 16, 20-21, 691 P.2d 245 (1984) (defense counsel's participation in another trial may justify an extension of the trial date beyond the speedy trial period).

The trial judge in this case indicated as reasons for granting the continuance, among other factors, that it was past 7 p.m. and that the mental illness calendar that day was unusually congested because three very complex cases with expiration times earlier than Kirby's had come before him. The judge also mentioned the unavailability of a state witness (a doctor who had evaluated Kirby) who had appointments with patients that evening.[3] Because the circumstances in this case indicate unavoidable and unusual delay attributable to the nature of the particular cases before the court that day, rather than an institutionalized congestion

---

[3] We do not reach the issue whether unavailability of a state witness justified granting a continuance in this case, because the court had other proper reasons justifying its grant. We note, however, that the unavailability stemmed from much the same factors on which the trial court relied in granting the continuance.

of the system, the court did not abuse its discretion in granting a continuance for good cause under MPR 1.2(b)(2).[4]

Kirby's second contention is that the trial court had before it insufficient evidence to warrant committing her for involuntary intensive treatment pursuant to RCW 71.05-.230(2), which requires "evidence that [respondent] has not in good faith volunteered" for treatment. RCW 71.05.240 provides for involuntary treatment under the following circumstances:

> At the conclusion of the probable cause hearing, if the court finds by a preponderance of the evidence that such person, as the result of mental disorder, presents a likelihood of serious harm to others or himself or herself, or is gravely disabled, and, after considering less restrictive alternatives to involuntary detention and treatment, finds that no such alternatives are in the best interests of such person or others, the court shall order that such person be detained for involuntary treatment not to exceed fourteen days in a facility certified to provide treatment by the department of social and health services. If the court finds that such person, as the result of a mental disorder, presents a likelihood of serious harm to others or himself or herself, or is gravely disabled, but that treatment in a less restrictive setting than detention is in the best interest of such person or others, the court shall order an appropriate less restrictive course of treatment for not to exceed ninety days.

RCW 71.05.230 provides in pertinent part:

> A person detained for seventy-two hour evaluation and treatment may be detained for not more than fourteen additional days of involuntary intensive treatment . . . if the following conditions are met:
> . . . .
> (2) The person has been advised of the need for voluntary treatment and the professional staff of the facility has evidence that . . . she has not in good faith volunteered[.]

As evidence that Kirby could not be considered a good faith voluntary patient, the State offered the petition for 14-day involuntary treatment. That document states as the reason Kirby was not a good faith voluntary patient merely

---

[4]Because the trial court did not abuse its discretion in granting the continuance, we need not reach the issue raised by Kirby that failure to abide by the provisions of RCW 71.05.240 deprives the trial court of jurisdiction.

that "she [Kirby] is too impulsive." As the reason that no less restrictive alternatives to involuntary commitment were in the best interest of Kirby and others, the document states: "judgment and impulse control are too impaired."

Apart from these conclusory statements, the court also relied on the testimony of an emergency room social worker who had evaluated Kirby and testified that Kirby stated she took an overdose because of thoughts of having to kill a child, and that Kirby had vacillated about taking her medication and coming to the hospital. The social worker also relied on statements by Kirby's mother to the effect that her daughter had not been taking her medications. Apparently the social worker deemed that this information, taken together, meant Kirby could not be a good faith voluntary psychiatric patient.

While this record certainly justifies a conclusion Kirby was ill, we fail to see how any of it relates to the question of whether she could be considered a good faith voluntary patient. This is particularly true because Kirby initially sought out treatment voluntarily, and because the record from the probable cause hearing contains repeated lucid and rational assurances by Kirby that if released she would see her psychiatrist, follow his advice including taking medication, and contact her doctor or a crisis clinic if she sensed a recurrence of mental disturbances. In addition, she indicated a preference for maintaining control over her own treatment. It is clear from the record, moreover, that Kirby understood she had an incentive to abide by voluntary treatment guidelines. In response to the court's question about how she felt at the prospect of placement in Western State Hospital, Kirby, who stated she had visited that facility a year and a half earlier, said, "I would object strenuously. I do not want to go there. . . . I'm not willing to enter that facility. . . . That place terrified me."

■ Where a potential detainee has put her status as a good faith voluntary patient at issue, the burden is on the State to show by a preponderance of the evidence that the patient has not in good faith volunteered for appropriate

treatment before involuntary treatment may be ordered. *See In re Chorney*, 64 Wn. App. 469, 825 P.2d 330 (1992). Contrary to the State's assertion, the record not only fails to disclose evidence that Kirby could not be considered a good faith voluntary patient, but instead supports the opposite conclusion. The State therefore failed to meet its burden to show by a preponderance of the evidence that Kirby could not be considered a good faith voluntary patient.

■ The Washington Supreme Court has repeatedly emphasized that caution must be exercised in mental illness proceedings:

> We fully recognize the danger of a deprivation of due process in proceedings dealing with persons charged with insanity or, as here, with a psychopathic personality . . ., and the special importance of maintaining the basic interests of liberty in a class of cases where the law though "fair on its face and impartial in appearance" may be open to serious abuses in administration and courts may be imposed upon if the substantial rights of the persons charged are not adequately safeguarded at every stage of the proceedings.

*In re Quesnell*, 83 Wn.2d 224, 231, 517 P.2d 568 (1973) (quoting *Minnesota ex rel. Pearson v. Probate Court*, 309 U.S. 270, 276-77, 84 L. Ed. 744, 60 S. Ct. 523, 126 A.L.R. 530 (1940)). And further:

> "Measures which subject individuals to the substantial and involuntary deprivation of their liberty contain an inescapable punitive element, and this reality is not altered by the facts that the motivations that prompt incarceration are to provide therapy or otherwise contribute to the person's well-being or reform. As such, these measures must be closely scrutinized to insure that power is being applied consistently with those values of the community that justify interference with liberty for only the most clear and compelling reasons." F. Allen, *The Borderland of Criminal Justice* 37 (1964).

*In re Quesnell*, 83 Wn.2d at 231 n.6. Moreover, an important policy concern renders it inadvisable to impose involuntary procedures lightly on persons who voluntarily present themselves for treatment, as Kirby did in this instance: "If commitment is always associated with force, those who need help may be diverted from seeking assistance." *In re Harris*,

98 Wn.2d 276, 288, 654 P.2d 109 (1982) (citing Coleman, *"You'll Thank Us Later": Rationalizing Civil Commitment of the Mentally Disordered*, 4 Hamline L. Rev. 425, 447 (1981)).

These considerations, combined with the statement of legislative intent underlying RCW 71.05, which lists safeguarding individual rights among its enumerated purposes, RCW 71.05.010(3), indicate that the State has a special obligation to go forward in involuntary mental illness proceedings upon an adequate and carefully supported record. The State failed to compile such a record in this case. Because the evidence produced by the State was insufficient to show by a preponderance of the evidence that Kirby was unfit for voluntary treatment, the trial court abused its discretion in committing Kirby for involuntary treatment.

The trial court's order of continuance is affirmed. The order for involuntary detention is vacated.

PEKELIS and FORREST, JJ., concur.