# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In re the Detention of: | ) | No. 69811-7-I |
|  | ) |  |
| J.G. (DOB: 8-23-89), | ) | DIVISION ONE |
|  | ) |  |
| Appellant. | ) |  |
|  | ) | UNPUBLISHED |
|  | ) |  |
|  | ) | FILED: June 30, 2014 |
|  | ) |  |

Cox, J. — At issue is whether the trial court abused its discretion when it found good cause to continue the probable cause hearing of J.G. under the involuntary treatment act, chapter 71.05 RCW. We hold that, pursuant to RCW 71.05.240(1), good cause existed and affirm.

On Sunday, December 30, 2012, a designated mental health professional petitioned for the initial detention of J.G. The petition alleged that J.G. presented a likelihood of serious harm to himself or others and that he was gravely disabled. The "Custody Authorization" form indicates that J.G. was detained at Harborview Medical Center for evaluation and treatment.[1]

The State subsequently filed a petition for 14 days of involuntary treatment. The law entitled J.G. to a judicial hearing "within seventy-two hours of

---

[1] Clerk's Papers at 13 (citing RCW 71.05.153(1), (2)(a)).

No. 69811-7-I/2

the initial detention."[2] A "Statement of Rights" informed J.G. that he had the right to a judicial hearing within seventy-two hours, excluding Saturdays, Sundays, and holidays, to determine whether there was probable cause to commit him for further treatment. A probable cause hearing on the petition was scheduled for Thursday, January 3.

Shortly before 4 p.m. on January 3, the State moved to continue the probable cause hearing to the next day. J.G. objected. The court granted the good cause continuance and ordered that the hearing be continued to January 4. It also granted J.G.'s request that if he was detained for 14 days that he would be given credit from January 3.

The next day, Friday, January 4, the State requested a second good cause continuance. J.G. asked the court to dismiss the case. The court granted the continuance and ordered that the hearing be continued until Monday, January 7.

On Monday, January 7, J.G. renewed his motion to dismiss for failure to hold a probable cause hearing within 72 hours. The court denied the motion.

After hearing evidence from several witnesses, the trial court concluded that J.G. suffered from a mental disorder and presented a substantial risk of harm to others. The court entered an order committing J.G. for involuntary treatment for a period of 14 days. The order indicated that this period would run from January 3, memorializing the court's prior ruling granting J.G. credit for time spent in the hospital since January 3.

---

[2] RCW 71.05.240(1).

2

J.G. appeals.

## GOOD CAUSE CONTINUANCES

J.G. argues that the trial court abused its discretion when it found good cause to twice continue his probable cause hearing. Specifically, he contends that "continuance of the 72-hour hearing based on systemic overcrowding was not good cause and required dismissal." We hold that good cause existed, permitting the continuances beyond the 72-hour limit.

Civil commitment statutes are construed strictly because they involve deprivation of liberty.[3] "Where statutory language is plain and unambiguous, a statute's meaning must be derived from the wording of the statute itself."[4] A court construes statutes as a whole to give effect to all of the language and to harmonize all provisions.[5]

RCW 71.05.240 sets forth provisions related to the probable cause hearing. RCW 71.05.240(1) states:

> If a petition is filed for fourteen day involuntary treatment or ninety days of less restrictive alternative treatment, the court *shall* hold a probable cause hearing within seventy-two hours of the initial detention of such person as determined in RCW 71.05.180. If requested by the detained person or his or her attorney, the hearing may be postponed for a period not to exceed forty-eight hours. *The hearing may also be continued subject to the conditions set forth in RCW 71.05.210 or*

---

[3] In re Det. of C.W., 105 Wn. App. 718, 729, 20 P.3d 1052 (2001).

[4] The Human Rights Comm'n v. Cheney Sch. Dist. No. 30, 97 Wn.2d 118, 121, 641 P.2d 163 (1982).

[5] C.W., 105 Wn. App. at 724.

3

> ***subject to the petitioner's showing of good cause for a
> period not to exceed twenty-four hours.***[6]

This statute states that the probable cause hearing for 14-day involuntary treatment shall take place within 72 hours of initial detention. But the emphasized language in the above quotation also states that this hearing may be continued subject to "the [State's] showing of good cause for a period not to exceed twenty-four hours."[7] The plain meaning of these words is that a continuance for good cause extends the 72-hour expiration deadline. Thus, the question in this case is whether good cause existed for each 24-hour continuance.

Whether good cause exists in a particular case is a fact-specific inquiry. Generally, in the context criminal cases, court congestion or courtroom unavailability is not good cause to justify delaying a criminal trial beyond the speedy trial period.[8] "A court can allow a continuance due to congestion when it carefully makes a record of the unavailability of judges and courtrooms and of the availability of judges pro tempore."[9] But if the court does not document the

---

[6] (Emphasis added.)

[7] RCW 71.05.240(1).

[8] See e.g., State v. Kenyon, 167 Wn.2d 130, 137, 216 P.3d 1024 (2009); State v. Flinn, 154 Wn.2d 193, 200, 110 P.3d 748 (2005); State v. Warren, 96 Wn. App. 306, 309, 979 P.2d 915 (1999); State v. Kokot, 42 Wn. App. 733, 736-37, 713 P.2d 1121 (1986); State v. Mack, 89 Wn.2d 788, 793-95, 576 P.2d 44 (1978).

[9] Id.

4

available courtrooms and judges, this failure may result in a violation of the speedy trial rule.[10]

In the context of involuntary treatment act proceedings, the leading case analyzing "good cause" under the statute is In re Detention of Kirby.[11] There, this court looked to criminal cases for guidance and acknowledged the general rule that docket congestion does not generally constitute good cause.[12] But this court also stated, "Where the circumstances attending the request are anomalous rather than typical of the operation of the administration of justice, granting a continuance is proper."[13]

The Kirby court then concluded that the reasons cited by the trial court were sufficiently tenable to constitute good cause.[14] Those reasons included that it was past 7 p.m., the mental illness calendar that day was unusually congested because three complex cases with earlier expiration times had come before Kirby's case, and a State's witness was unavailable.[15] This court stated, "Because the circumstances in this case indicate unavoidable and unusual delay attributable to the nature of the particular cases before the court that day, rather than an institutionalized congestion of the system, the court did not abuse its

---

[10] See id. at 139.

[11] 65 Wn. App. 862, 829 P.2d 1139 (1992).

[12] Id. at 867-68.

[13] Id. at 868.

[14] Id. at 868-69.

[15] Id. at 868.

discretion in granting a continuance for good cause . . . ."[16] The supreme court later approved this analysis.[17] And it stated, "We also noted with approval a Court of Appeals decision that in the context of the involuntary commitment statute, RCW 71.05.240, good cause 'required an unavoidable and unusual delay which was outside the State's control.'"[18]

Additionally, when considering whether dismissal is appropriate in cases brought under the involuntary treatment act, courts have looked to the express purposes of the act for guidance.

For example, in In re Detention of Swanson, the supreme court cited the purposes of the involuntary treatment act when it analyzed Lonnie Swanson's motion to dismiss.[19] There, Swanson's motion was based on the fact that his hearing began approximately 20 minutes after the expiration of the 72-hour period.[20] The State had not requested a continuance.[21]

In analyzing Swanson's claims, the supreme court noted that the statute required Swanson's hearing to begin before the 72-hour period lapsed.[22]

---

[16] Id. at 868-69.

[17] See State v. Dearbone, 125 Wn.2d 173, 181, 883 P.2d 303 (1994).

[18] State v. Luvene, 127 Wn.2d 690, 718 n.7, 903 P.2d 960 (1995) (quoting Dearbone, 125 Wn.2d at 181).

[19] 115 Wn.2d 21, 28-29, 804 P.2d 1 (1990).

[20] Id. at 25.

[21] Id. at 30 n.6.

[22] Id. at 28.

Nevertheless, it affirmed the trial court's denial of Swanson's motion. The supreme court stated that it was "guided by" the intent of the civil commitment statute.[23] Specifically it stated:

> The goals of ensuring continuity of care and protecting the public are decidedly not met if dismissal of properly filed and factually supported petitions turns on the inherent unpredictability of a court's calendar, rather than on the court's determination of whether or not legal grounds for commitment exist.[24]

Further, it stated, "[I]f the intent of the statute is to be fulfilled and absurd results are to be avoided, dismissal cannot turn on the vagaries of scheduling, especially in these unpredictable and sensitive proceedings."[25]

The supreme court also considered the policies underlying the involuntary treatment act in In re Detention of G.V.[26] There, the supreme court concluded that a court commissioner abused its discretion when it denied the State's motions for continuances and dismissed the petitions to commit two mentally-ill individuals.[27]

In reaching this conclusion, the court looked to, among other things, the following "compelling public interests" of the involuntary treatment act: "'(2) To provide prompt evaluation and short term treatment of persons with serious mental disorders,' '(4) To provide continuity of care for persons with serious

---

[23] Id. at 31.

[24] Id. at 29.

[25] Id. at 31.

[26] 124 Wn.2d 288, 877 P.2d 680 (1994).

[27] Id. at 295.

mental disorders,' and '(7) To protect the public safety.'"[28] The court stated that the involuntary treatment act is to be carefully construed to achieve these purposes.[29] The court also stated, "Underlying the involuntary treatment act is a tacit presumption in favor of deciding issues on the merits."[30]

"Decisions whether to grant a motion for a continuance are generally within the discretion of the trial court and are upheld absent an abuse of discretion."[31] Thus, "'[I]t will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"[32] "Whether this discretion is based on untenable grounds, or is manifestly unreasonable, or is arbitrarily exercised, depends upon the comparative and compelling public or private interests of those affected by the order or decision and the comparative weight of the reasons for and against the decision one way or the other."[33]

Here, the trial court did not abuse its discretion when it granted the two continuances.

---

[28] Id. (quoting RCW 71.05.010).

[29] Id. at 296.

[30] Id.

[31] Id. at 295.

[32] Kirby, 65 Wn. App. at 867 (quoting In re Det. of Schuoler, 106 Wn.2d 500, 512, 723 P.2d 1103 (1986)).

[33] Id. (quoting Schuoler, 106 Wn.2d at 512).

The trial court's order granting the first continuance stated that "[g]ood cause exists due to docket congestion." But, in its oral ruling, the court provided additional details. It stated:

> [W]e had 80 cases on today—we had one add-on and so the calendar had 79 and we had an add-on. 36 hearings called out at first call, you know, it was obvious we weren't going to finish them all. And we don't even have enough courtrooms to accommodate this. We probably would have needed two more courtrooms to get through everything.[34]

And at the end of the hearing, the court stated, "Okay. So that's a bubble . . . ."[35]

Taken together, the trial court's oral remarks and its order support the determination that good cause existed to continue the probable cause hearing from Thursday, January 3 until the next day. While sparse, this record is sufficient to support this continuance.

Although the court did not make a record with every pertinent detail, the court did provide sufficient details about the court congestion that day. The court stated the number of cases on the docket: 80 cases, 36 of which were at the first call of the calendar. The court also specified that there was a lack of courtrooms to handle the calendar.

If it were not already obvious that 80 cases on one calendar and a lack of courtrooms to handle that many cases, the court's characterization of the situation as a "bubble" certainly establishes that the situation on that day was atypical. Further, like in Kirby, the State's motion came late in the day—at 3:48

---

[34] Report of Proceedings (Jan. 3, 2013) at 9.

[35] Id. at 10.

p.m.[36] This fact supports the conclusion that the congestion was unavoidable. Thus, mere court congestion was not what prevented the probable cause hearing for J.G. Rather, it was unavoidable, atypical court congestion and lack of courtroom resources that caused the need for a delay. Accordingly, Kirby supports the grant of this continuance, because the congestion was not "an institutionalized congestion of the system."[37]

Moreover, in G.V., the supreme court cautioned against denying a continuance based on systemic problems unless there are facts to support it.[38] In that case, the supreme court stated, "[D]enying the continuance on the basis of unsubstantiated and historical acts and omissions is inappropriate, particularly on a record devoid of any facts substantiating the frequency with which continuances have been sought."[39] Similarly, in this case, the record is "devoid of any facts substantiating" J.G.'s allegations of systemic problems.

In sum, this record substantiates that good cause existed for the first continuance. The trial court properly exercised its discretion by granting this continuance.

The trial court's order granting the second continuance stated that there was "good cause to continue due to court congestion." But in its oral ruling, the court stated additional grounds for good cause. It stated, "In this case, as I

---

[36] Id. at 8.

[37] Kirby, 65 Wn. App. at 868-69.

[38] See G.V., 124 Wn.2d at 297.

[39] Id.

understand it, we've got two problems: The illness of counsel and a court congestion problem." Further, after the State indicated that the two earlier cases on the calendar involved the same expert witness and were also "knocked over" from the day before, the Court stated that that fact "strengthens the court's conclusion that there is good cause." In short, the expert witness could not be in two places at one time.

Kirby also supports the grant of this continuance. As the Kirby court noted, "[A] counsel's unavailability for trial can be an unforeseen and unavoidable circumstance beyond the court's control justifying the grant of a continuance."[40] Similar reasoning applies to the unavailability of an expert witness.

In sum, good cause also existed for this second continuance. The court properly exercised its discretion in granting this continuance.

Further, the policy considerations behind the involuntary treatment act also support the conclusion that the trial court properly granted the continuances. As previously discussed, in Swanson, the supreme court emphasized the goals of continuity of care and protecting the public.[41] And in G.V., the supreme court stated that underlying the involuntary treatment act "is a tacit presumption in favor of deciding issues on the merits."[42]

Here, the grant of the continuances ensured continuity of care, protected the public and J.G., and allowed the petition to be considered on the merits. If

---

[40] Kirby, 65 Wn. App. at 868.

[41] Swanson, 115 Wn.2d at 29.

[42] G.V., 124 Wn.2d at 296.

the continuances had not been granted, the petition would have been dismissed. Thus, the grant of the continuances was also in line with these important public and private interests.

J.G. argues that court congestion does not constitute good cause. We agree. But as J.G. acknowledges, the Kirby court stated, "Where the circumstances attending the request are anomalous rather than typical of the operation of the administration of justice, granting a continuance is proper."[43]

J.G. attempts to distinguish that rule by arguing that "[n]othing in this record indicates the circumstances were either unavoidable or unusual in any way." He asserts, "The congestion here was institutional based on the size and repetition of the inability to provide J.G. with a hearing." But, as discussed previously, we read the record differently. There is nothing in this record to substantiate his assertions that the congestion on the docket was institutional. In sum, the record substantiates the trial court's decisions to grant both continuances for good cause.

At oral argument on appeal, J.G. asserted that RCW 71.05.240 does not authorize multiple continuances for good cause sought by a petitioner. But this argument was not made to the trial court. And J.G. does not claim that this matter falls within the narrow exception of RAP 2.5(a). Accordingly, he fails to advance any reason why this failure to preserve the issue below warrants our consideration of this new argument on appeal. Accordingly, we do not address that claim.

---

[43] Kirby, 65 Wn. App. at 868.

The State makes an additional argument. Specifically, the State relies on Mental Proceedings Rule (MPR) 1.2, and <u>In re Detention of C.M.</u>, to argue that this rule and case law permits continuances beyond 24 hours.[44] But we need not reach this argument given our previous discussion.

We affirm the order of commitment.

Cox, J.

WE CONCUR:

Spearman, C.J.

Dwyer, J.

___

[44] Brief of Respondent at 13-18 (citing <u>In re Det. of C.M.</u>, 148 Wn. App. 111, 197 P.3d 1233 (2009)).